IN RE ADOPTION OF RIDENOUR ET AL.

[Cite as *In re Adoption of Ridenour* (1991), 61 Ohio St.3d 319.]

(No. 90–637—Submitted February 12, 1991—Decided August 7, 1991.)

*Stebelton, Aranda & Snider* and *James C. Aranda,* for appellants.

*Dagger, Johnston, Miller, Ogilvie & Hampson* and *Norman J. Ogilvie, Jr.,* for appellee grandmother.

*Lantz, Lantz & Lipp* and *Thomas C. Lipp,* for appellee grandparents.

*Robert C. Hetterscheidt,* urging reversal for *amicus curiae,* Franklin County Children Services Board.

ALICE ROBIE RESNICK, J. This case presents two issues for our consideration. First, we must decide whether the trial judge abused his discretion in denying the appellants' adoption petitions. Second, we must decide whether the trial judge erred in considering grandparent post-adoption visitation rights.

As to the first issue, we find that the trial judge abused his discretion by failing to base his adoption decisions on a consideration of the best interests of the children involved. In order for an appellate court to find that a trial court committed an abuse of discretion, the court must find more than an error of law or judgment in the judge's decision. This court has repeatedly held that the term "abuse of discretion" implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 173, 404 N.E.2d 144, 149, citing *Steiner v. Custer* (1940), 137 Ohio St. 448, 19 O.O. 148, 31 N.E.2d 855. Moreover, we have specifically held that this definition of abuse of discretion is fully applicable in the domestic relations context. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.

In deciding whether to grant or deny an adoption, the trial judge must consider "(1) whether the petitioner is suitably qualified to care for and rear the child, and (2) whether the best interests of the child will be promoted by the adoption." *State, ex rel. Portage Cty. Welfare Dept., v. Summers* (1974), 38 Ohio St.2d 144, 67 O.O.2d 151, 311 N.E.2d 6, paragraph four of the syllabus; *In re Adoption of Charles B* (1990), 50 Ohio St.3d 88, 93, 552 N.E.2d 884, 889. In the case at bar, the trial judge specifically found that the appellants were suitable parents for the girls. Upon reviewing the evidence, we do not believe that this conclusion is arbitrary, capricious, or unreasonable. The record in this case contains letters from two different couples, both of

which highly recommend the appellants as adoptive parents.[3]  The record as to each child also contains a Report on the Proposed Adoption prepared by the Fairfield County Children Services Board.  In recommending that the court grant the appellants' adoption petitions, the agency highly recommended the appellants and expressed extreme confidence in their parenting abilities.[4]  In light of this evidence, we find that the trial judge did not abuse his discretion in concluding that the appellants are suitable parents for Anne Elizabeth and Elizabeth Ann.

However, an examination of the evidence presented in this case reveals that the judge did not properly consider the best interests of the children in ruling on the adoption petitions in the case at bar.  The evidence in the record suggests that the appellants are in a stable marriage, warm and caring, and experienced in dealing with both natural and adopted children.  While this evidence, facts concerning the appellants' suitability as parents, does not in and of itself establish that the adoptions are in the children's best interests, it does suggest that the children will be raised in a stable and healthy environment if they are placed in the appellants' care.

Several other factors suggest that the children's interests will be well served if they are adopted by the appellants.  The children services board not only consented to the adoption, but, as stated above, strongly recommended that the children be adopted by the Ridenours.  This stands in stark contrast to a large number of adoption cases where adoptions are granted without the consent or against the recommendation of the social services agency involved.  Moreover, in this case, it appears that the caseworker who recommended the adoptions had been working with both the children and the appellants for

3.  In recommending the appellants as adoptive parents, Fred and Faith Sherlock stated in pertinent part: "John and Mary are very nice people.  The children are always clean and well dressed.  The parents and older children all display a high degree of patience with the two little ones.  They attend church almost every Sunday.  I feel that they want to adopt the children because they have a lot of love to give and the children need a lot of love.  Their own children seem to love their parents a lot.  We have known them for two or three years * * *."

In recommending the appellants as adoptive parents, Jeff and Joan Sherlock stated, *inter alia*, the following: "You asked for our honest opinion of Mary and John Ridenour and their ability to provide physical and emotional care to children.  In our opinion, they are both emotionally stable and mature individuals.  Judging by the actions and conversations of both parents and children, their home is a place of security, love and acceptance for all members."

4.  The pertinent portion of the report states as follows: "The Ridenours are a very close-knit, religious family.  John and Mary's marriage appears to be stable and the children appear to love and respect their parents.  Most family activities center around the children's school/ sports program as well as church functions.  The Ridenours adopted their daughter, Sarah, two years ago and are experienced, caring parents.  They have been foster parents for the girls for two years and have been very dedicated, loving parents to them."

nearly two years. Like the trial judge's finding of suitability, this recommendation is not a conclusive finding as to the best interests of the children. However, given the agency's professional expertise and experience with these children, it does suggest that the children's interests will be well served if they are adopted by the Ridenours.

Moreover, adoption by the Ridenours would provide the two girls with the stability and continuity essential to healthy development. As noted above, the girls began living with the Ridenours when they were mere infants and have been living with them on a continuous basis since that time. In fact, as of this writing, the girls have been under the Ridenours' care for nearly four years. If the children are adopted by the Ridenours, the patterns of daily life, the mode of discipline, and the practical and spiritual rituals to which they have grown accustomed will remain constant. The emotional bonds which the children have formed with the members of the Ridenour family will remain intact.

By contrast, if the girls are not adopted by the Ridenours, they may be moved several times before they find a suitable permanent home. Moreover, even if they remain with the Ridenours until they are adopted by a new family, a host of problems awaits them. It may take months or even years to find a suitable adoptive family for the children. At that point, their psychological and emotional bonds to the Ridenours are likely to be very strong and the impact of separation could be negative and profound. In addition, unlike the Ridenours, many potential adoptive families may be unwilling to accept both girls. Consequently, it is possible that the sisters, who have lived together since infancy, will be forced to grow up separately.

Despite all these factors, the trial judge denied the Ridenours' petitions for adoption. While it is not our province to advise the court as to the proper ruling on the adoption petitions, the trial judge does not appear to have considered the children's best interests in issuing the denials. In fact, it seems that in denying the adoptions, the judge elevated the rights of the grandparents over the best interests of the children.

The record in this case reveals that visits with the grandparents upset the children and significantly altered their behavior. The trial judge himself noted as to both children that "whenever such visits occur there is an emotional and physical disturbance with the child, a period of retesting of the adoptive parents by the child and at least several days to get the child back under the control of the adoptive parents." Along the same lines, the psychologists who interviewed the children prior to the adoption hearing recommended that grandparent visitation be curtailed, terminated temporarily

or strictly supervised due to its apparent negative impact on the children's behavior.

In addition to acknowledging the difficulty with grandparent visitation rights, the trial judge did not point to any evidence supporting grandparent visitation rights or suggesting that the grandparents would have a positive influence on the children. Nonetheless, he denied the adoptions simply and solely because of the difficulties it would create for grandparent visitation rights: "The Court does not believe it desirable to make the hoped for good times of visitation by the grandmother or the grandparents to become an ordeal to the child and the adoptive parents for days before and after each visit. It is the opinion of the Court that it is not appropriate or in the best interest of Anne Elizabeth [or Elizabeth Ann] to force this turmoil on her, the adoptive parents, the maternal grandmother and paternal grandparents over and over with each visitation. Under the circumstances as they exist in this case with grandmother and grandparents visitation to be regular events and with a record of anxiety and disturbance for * * * [the children], the Court does not believe this adoption is in the best interest of * * * [the children]."

Not only does this finding reflect as much, if not more, concern for the other parties involved as it does for the children, but it also suggests that unless the grandparents can be accommodated the children will be required to remain wards of the state indefinitely. In light of the total absence of evidence regarding the beneficial effects of grandparent visitation rights and the overwhelming evidence suggesting that the children's interests will be well served if they are adopted by the Ridenours, we find that the trial judge did not give priority to the best interests of the children in reaching his decisions. Instead, he fashioned his opinions so as to protect the "hoped for good times of visitation." In so doing, he elevated the rights of the grandparents over the best interests of the children in violation of the Revised Code and the relevant case law. While we by no means suggest that the trial judge must rule in a particular fashion on the adoption petitions, we remand this case so that the judge may reach a decision which places the best interests of the children above all other considerations.

We must next decide whether, on remand, the trial judge may even consider grandparent visitation rights. The appellees contend that where grandparent visitation has been found to be in a child's best interest, a trial judge has the discretion to take visitation into account in ruling on an adoption petition. The appellants dispute this assertion and maintain that Ohio law does not support post-adoption visitation by grandparents in a stranger adoption. For the reasons which follow, we find in favor of the appellants on this issue.

As an initial matter, we find that the juvenile court abused its discretion in ordering that grandparent visitation rights be continued post-adoption. When the juvenile court granted permanent custody of the children to the children services board, the court issued the following order:

"It is further Ordered, Adjudged and Decreed that the Court will reserve the right to visitation between the above captioned child and the maternal and paternal grandparents * * *.

" * * *

"It is further Ordered, Adjudged and Decreed that the above captioned visitation order be maintained at the time of the adoption of the above captioned child and that such visitation order be maintained subsequent to such adoption." In issuing this order, the juvenile court placed a condition upon the future adoption of the children, a condition which is to be applied regardless of the particular character and needs of the potential adoptive family.

We find this order to be impermissible on several grounds. First, we note that the order constitutes an unauthorized infringement on the jurisdiction and judicial discretion of the probate court. Ohio courts have repeatedly held that the power to grant or deny an adoption rests with the probate court. *In re Adoption of Biddle* (1958), 168 Ohio St. 209, 6 O.O.2d 4, 152 N.E.2d 105 (holding that former R.C. 3107.02 [now 3107.03] vests exclusive jurisdiction over adoption proceedings in the probate court); *Logan v. Logan* (1960), 111 Ohio App. 534, 13 O.O.2d 364, 170 N.E.2d 922. The probate court is empowered by the legislature to reach adoption decisions on the basis of the best interests of the child at the time the petition is filed. If the probate court is bound by a prior order from another court, then the probate court may be forced to sacrifice the best interests of the child in order to protect the rights accorded to third parties. Such a result would be inconsistent with the adoption statute and the policies underlying it.

As the appellants note in their brief, the state has a strong interest in the permanent placement of children. Adding preconditions and parties to an adoption proceeding will serve only to confuse, delay, and in some cases completely abort, the placement process. This will place an additional onus on the already overburdened children services agencies. More importantly, by delaying and deterring adoption, it will deprive children of the stability and security which they need to become productive and well-adjusted members of the adult community. To avoid these problems, the probate court must have the authority to reach a decision based on the best interests of the child at the time in question, a decision which is not constrained by an order issued at a prior time under a different set of circumstances.

Even if the juvenile court had the authority to set post-adoption terms and conditions, neither the juvenile court, nor the probate court, may consider the possibility of post-adoption visitation by biological grandparents following a stranger adoption. We reach this conclusion by examining the Ohio adoption statute and the policies behind it. R.C. 3107.15 provides, in pertinent part:

"(A) A final decree of adoption and an interlocutory order of adoption that has become final, issued by a court of this state, shall have the following effects as to all matters within the jurisdiction or before a court of this state:

"(1) Except with respect to a spouse of the petitioner and relatives of the spouse, to relieve the biological or other legal parents of the adopted person of all parental rights and responsibilities, and to terminate all legal relationships between the adopted person and his relatives, including his biological or other legal parents, so that the adopted person thereafter is a stranger to his former relatives for all purposes including inheritance and the interpretation or construction of documents, statutes, and instruments, whether executed before or after the adoption is decreed, which do not expressly include the person by name or by some designation not based on a parent and child or blood relationship;

"(2) To create the relationship of parent and child between petitioner and the adopted person, as if the adopted person were a legitimate blood descendant of the petitioner, for all purposes including inheritance and applicability of statutes, documents, and instruments, whether executed before or after the adoption is decreed, which do not expressly exclude an adopted person from their operation or effect."

On its face, this statute suggests that the children's relationship with their biological grandparents must be terminated once they are adopted. If that is the case, then a juvenile judge may not order that visitation continue post-adoption, and a trial judge may not consider grandparents' rights, or their attitude toward a potential adoptive family, in ruling on an adoption petition. The appellees contend that imposing such a restriction on the trial judge in the case at bar will jeopardize the children's interests, particularly since the juvenile court has already determined that continued visitation with the grandparents is in the children's best interests. They argue that the trial judge must have the authority to consider the particular circumstances surrounding these children, the nature and quality of the bonds that have developed between the grandparents and the children, and the children's desires with regard to grandparent visitation. If these factors are not taken into account, and grandparent visitation is *per se* prohibited following a stranger adoption, the best interests of these children, and the interests of children in future adoption cases, will be unfairly sacrificed.

In buttressing their argument, the appellees refer to R.C. 3109.05. At the time this case was decided, R.C. 3109.05, which dealt with visitation in the context of divorce, dissolution, alimony, or child support proceedings, provided in division (B) that "[i]n the discretion of the court, reasonable companionship or visitation rights may be granted to any other person having an interest in the welfare of the child." The current analogue to this provision, R.C. 3109.051, specifically mentions grandparents as persons who may receive visitation rights.[5] Moreover, the statute is emphatic in its attempt to protect the child's interests. Not only does the statute contain an extensive list of factors for the judge to consider in reaching a visitation decision, but it also focuses exclusively on the child's interests, leaving aside the needs and concerns of all other parties. According to the appellees, this reflects a legislative trend toward allowing the best interests of the child to govern in all visitation cases. Consequently, the appellees imply, where a juvenile court issues an order granting post-adoption visitation rights to biological relatives on the ground that continued visitation is in the best interests of the child, it would be consistent with legislative intent to uphold the order. Concomitantly, when continued visitation has been previously determined to be in the best interests of the child, it would be consistent with legislative intent to allow a trial judge to preserve those visitation rights in ruling on an adoption petition.

While we do not find the appellees' arguments to be wholly without merit, we cannot accept them. Former R.C. 3109.05 and its current analogue, R.C. 3109.051, address visitation in the context of divorce, dissolution, alimony, separation, annulment, and/or child support proceedings. The statutes contain no reference to adoption. Moreover, there is nothing in the language of these statutes which suggests that through their passage the legislature intended to indirectly liberalize the strict dictates of R.C. 3107.15 to allow post-adoption visitation by biological grandparents. Faced with a similar

---

5. Effective May 31, 1990, the General Assembly amended R.C. 3109.05 and enacted R.C. 3109.051 to specifically permit grandparents and other relatives to receive reasonable companionship or visitation rights with respect to certain types of children. .The essential portion of R.C. 3109.05, quoted above, was transferred to R.C. 3109.051(B)(1), and now reads as follows:

"In a divorce, dissolution of marriage, legal separation, annulment, or child support proceeding, that involves a child, the court may grant reasonable companionship or visitation rights to any grandparent, any person related to the child by consanguinity or affinity, or any other person, other than a parent, if all of the following apply:

"(a) The grandparent, relative, or other person files a motion with the court seeking companionship or visitation rights;

"(b) The court determines that the grandparent, relative, or other person has an interest in the welfare of the child;

"(c) The court determines that the granting of the companionship or visitation rights is in the best interest of the child."

visitation statute—one that specifically permits the court to consider grandparent visitation in the context of divorce—and an equally restrictive adoption statute—one that terminates the relationship between an adopted child and the child's biological relatives upon adoption, at least one other court has found that the divorce statute is inapplicable and that the adoption statute precludes post-adoption visitation rights. *In re W.E.G. and J.R.G.* (Alaska 1985), 710 P.2d 410.

The vast difference between the policy concerns underlying the child protection statutes and the policy considerations behind the adoption statutes supports our refusal to interpret R.C. 3109.05 and its current analogue as an indirect amendment of R.C. 3107.15. In the context of a divorce, it is in the interest of the child to preserve to the greatest extent possible the healthy and beneficial relationships which the child enjoyed prior to the divorce. It is hoped that maintaining established familial relationships will minimize the negative impact of the divorce on the child. By contrast, the adoption statute seeks to transform the child's collection of relationships and, in effect, give the child a new identity. While this goal may not be fully attainable, particularly in the context of children who are not adopted immediately after birth, it must be pursued. Otherwise, children will become bewildered as adults battle for their time and affection, adoptive parents will not enjoy the same autonomy as natural parents, and potential adoptive parents may be discouraged from adopting for fear that they will have to compete with the child's biological family for the child's love and respect.

These problems are likely to be particularly acute in cases such as the one before us, where the biological relatives and the adoptive parents are strangers to one another. In fact, at least five states which permit grandparent visitation after a stepparent adoption specifically terminate or authorize termination of grandparent visitation rights if the child is adopted by a stranger. Vernon's Ann.Mo.Stat. 452.402(6) (Cum.1991); West's Ann.Cal. Code, Civil, Section 197.5; Ann. Laws of Mass. (Cum.Supp.1991), Chapter 119, Section 39D; Minn.Stat.Ann. Section 257.022, Subd. 3 (West Supp.1991); Mont. Code Ann. Section 40–9–102(5) (1989). Moreover, the appellees have not pointed to a single case in Ohio, or in any other state, in which post-adoption visitation rights were upheld following a stranger adoption.[6]

---

6. As the appellants note in their brief, in *Johnson v. Fallon* (1982), 129 Cal.App.3d 71, 181 Cal.Rptr. 414, a California court of appeals held that grandparent visitation was permissible after a stranger adoption. However, that case has no precedential value, as it was withdrawn from official publication by order of the court. Both Ohio cases cited by the appellees in which grandparent visitation was permitted post-adoption involved adoption by a stepparent, not by a

We recognize that grandparent-grandchild relationships can be of significant value to a child's development. Sociologists have found that "interaction between grandparents and grandchildren mitigates ageism in children because older people love them, mitigates sexism because grandmothers and grandfathers do essentially the same thing, and eliminates fear of old age because grandparents serve as ancestor role models." Zablotsky, To Grandmother's House We Go: Grandparent Visitations after Stepparent Adoption (1985), 32 Wayne L.Rev. 1, 46. Moreover, several courts have noted that where grandparents do not play a primary role in dispensing discipline, they are able to form relationships with their grandchildren which are free of the tensions and pressures which commonly mar parent-child relationships. *In re Whitaker* (1988), 36 Ohio St.3d 213, 522 N.E.2d 563; *Mimkon v. Ford* (1975), 66 N.J. 426, 332 A.2d 199.

Despite the potential benefits that children may derive from relationships with their grandparents, we cannot hold that the state's interest in preserving the extended family overrides its interest in providing children, who would otherwise become wards of the state, with a permanent and stable home. Although there may be cases where a child who is adopted by strangers would benefit from continued interaction with his biological grandparents, we cannot permit such a result unless the legislature modifies R.C. 3107.15. R.C. 3107.15 reflects the legislature's intent to find families for children. If preconditions are imposed on the adoptive parent-child relationship, or if adoptive parents are forced to agree to share parenting responsibilities with people whom they do not know, many potential adoptive parents will be deterred from adopting. Moreover, even where adoptive parents consent to visitation by biological relatives whom they do not know, such an arrangement is bound to be stressful for the child, particularly where the parties are not favorably disposed toward one another. In the absence of a legislative directive, we cannot sanction such a result. Consequently, we hold that the juvenile court abused its discretion in ordering that visitation with the biological grandparents shall continue post-adoption and that the trial judge erred in considering the grandparents' visitation rights in ruling on the adoption petitions.

Finally, we find that the trial court erred in granting the appellees' motions to intervene in the adoption proceeding. First, we note that there is no statutory basis for allowing the appellees to intervene. Under Civ.R. 24(A), a party has the right to intervene "when a statute of this state confers an unconditional right to intervene." Under Civ.R. 24(B), the judge may

stranger. *Graziano v. Davis* (1976), 50 Ohio App.2d 83, 4 O.O.3d 55, 361 N.E.2d 525; *Welsh v. Laffey* (1984), 16 Ohio App.3d 110, 16 OBR 117, 474 N.E.2d 681.

permit a party to intervene "when a statute of this state confers a conditional right to intervene." Unfortunately for the appellees, the relevant statutes, R.C. Chapter 3107, which govern all adoptions in Ohio, contain no provision giving the appellees either a conditional or an unconditional right to intervene. In fact, under R.C. 3107.11, the trial court is not even required to give the appellees notice of the adoption proceeding. R.C. 3107.11 does not mention grandparents as persons who must be notified and appellees do not fit the description of any of the parties who are entitled to notification under R.C. 3107.11(A).

Moreover, the appellees do not qualify as persons who must consent to an adoption pursuant to R.C. 3107.06. R.C. 3107.06, which requires the written consent of particular parties before an adoption petition may be granted, contains no reference to grandparents. Furthermore, appellees do not satisfy the description of any of the parties who are listed in R.C. 3107.06. Nonetheless, in their motions to intervene filed with the trial court, the appellees claim that the juvenile court's visitation order raises their standing to that of persons who must consent within the meaning of R.C. 3107.06(C). While it is not clear that the trial judge accepted this argument in granting the motions to intervene, we find that this contention is wholly without merit. R.C. 3107.06(C) provides that consent is required of "[a]ny person or agency having permanent custody of the minor or authorized by court order to consent." As the appellees have never had permanent custody of the children, their argument must be that they were authorized by the juvenile court to consent to the adoption. However, the juvenile court's order contains no such language. Moreover, as noted above, the portion of the juvenile court's visitation order granting the appellees post-adoption visitation rights is void as violative of R.C. 3107.15. Therefore, it may not provide a basis for granting the appellees' motions to intervene.

Appellees have pointed to no other provision granting them the right to intervene and we have found no such provision in our examination of the adoption statutes. Thus, the only question that remains is whether the juvenile court order granting visitation rights to the biological grandparents gives them a legally protectible interest which would allow them to intervene in the adoption proceeding pursuant to Civ.R. 24(A)(2). Civ.R. 24(A)(2) provides that a party has the right to intervene "when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." We acknowledge that under R.C. 3107.15, the grandparents will lose their visitation rights if the adoptions are granted. However, as we have noted above, the

purpose of the adoption proceeding is not to protect the grandparents' rights. The purpose is to determine, on the basis of the best interests of the child, whether to grant or deny the adoption petitions. Certainly, if the trial judge requires testimony from the grandparents so as to determine the child's best interests, the judge may obtain it. However, unless the appellees are themselves seeking to adopt, they do not have an interest in the adoption proceeding *per se* sufficient to give them standing to intervene. Consequently, we conclude that the trial judge erred in permitting the appellees to intervene.

For the reasons stated above, the judgment of the court of appeals is reversed.

*Judgment reversed.*

MOYER, C.J., WRIGHT and H. BROWN, JJ., concur.

SWEENEY and DOUGLAS, JJ., concur separately.

HOLMES, J., concurs in part and dissents in part.

DOUGLAS, J., concurring. I concur with the judgment of the majority except as to the question of remand. I would follow the dictates of R.C. 3107.15. In addition, from the overwhelming evidence presented to us and as detailed in part in the majority opinion, I would reverse the judgment of the court of appeals and grant the petitions for adoption. Upon the record presented to us, I cannot believe that a majority of this court would do other than find an abuse of discretion if the petitions were denied. That being the case, time, court and litigants' expense, and judicial economy would seem to argue favorably for our entering judgment.

SWEENEY, J., concurs in the foregoing opinion.

HOLMES, J., concurring in part and dissenting in part. We should remember in deciding all the issues involved in this case that there are a number of points of individual rights as well as a court's discretionary jurisdiction to be considered. I am in agreement with the majority that there is no specific statutory authority that would permit grandparents to be made a party to an adoption proceeding involving their grandchild. Also, I am in agreement that there is no statute which mandates the trial court to take any pleadings or memoranda of grandparents under consideration in order to consider their requests for visitation rights sought to be included within any adoption order. I agree in essence, then, that grandparents have no statutory rights in an adoption proceeding.

However, I am not convinced, as the majority of my colleagues apparently are, that the trial court, while considering the best interests of the child, has

no discretionary jurisdiction to review the familial input of the grandparents of the subject child or children, and to determine that the best interests of the children would be best served by continued association, to some degree, with their grandparents.

In light of the multifarious benefits which a child may derive from a healthy relationship with a grandparent, it would contravene the general policy of the adoption and visitation laws—that the best interests of the child must remain paramount—for this court to hold that, in all cases, adoption automatically terminates preexisting grandparent visitation rights. Upon examining the facts of the particular case, the trial judge may discover that the adoptive parents have no living parents, and that termination of visitation will permanently deprive the child of any grandparental influence. In such a case, the judge may decide that termination of visitation is not in the child's best interests. Similarly, the judge may discover that the grandparents have a preexisting relationship with the grandchild which has spanned several years and serves as a source of stability in the child's life. In such a case, the judge may decide that it is in the child's best interests to preserve the relationship.

I believe it to be a fair conclusion that the trial court, in the overall best interests of the subject child or children sought to be adopted, may review the desirability of continuing the relationship of the children and their grandparents. It is my thought that the trial court should have the jurisdiction, after such favorable consideration, to order that the grandparents have the right of continued association and, accordingly, order visitation for the grandparents within the adoption order.