FARLEY

v.

FARLEY, n.k.a. Gill, Appellant;  Farley et al., Appellees.

REYNARD

v.

REYNARD;  Reynard et al., Appellants;  JONES, Appellee.

[Cite as *Farley v. Farley* (1992), 85 Ohio App.3d 113.]

Court of Appeals of Ohio,
Licking County.

Nos. CA–3770 and 92–CA–30.

Decided Sept. 8, 1992.

*Wayne E. Link,* for appellant Jane Farley, n.k.a. Gill, in case No. CA–3770.

*Cindy Ripko,* for appellees Harvey and Martha Farley in case No. CA–3770.

*Cindy Ripko,* for appellants William and Margaret Reynard in case No. 92–CA–30.

MILLIGAN, Presiding Judge.

On August 6, 1992, this court heard two cases involving similar issues, *Reynard v. Reynard* (1992), Licking App. No. 92–CA–30, and *Farley v. Farley*, Licking App. No. CA–3770.  In *Reynard*, the maternal grandparent, Virginia Jones, who had been granted visitation rights in a divorce proceeding wherein custody was granted to the paternal grandparents, William and Margaret Reynard, sought an

order of visitation to continue after the probate court granted a paternal grandparent adoption upon the consent of both natural parents, Jodie L. and Paul K. Reynard.

In *Farley,* the paternal grandparents, Harvey and Martha Farley, sought an order of visitation in the original divorce proceedings between their son, Richard Farley, and daughter-in-law, Jane Farley, n.k.a. Jane Gill, under circumstances where, subsequent to the divorce, their son, the child's father, had parental rights terminated in favor of a stepfather's adoption.

In both cases the court granted grandparent visitation, in the first by refusing to vacate the preadoption order granting visitation, and in the second by exercising continuing jurisdiction and granting an order fixing grandparent visitation.

In *Reynard,* the adoptive grandparents-appellants postulate a single assignment of error:

"I. The court erred in finding that it retained jurisdiction to order visitation to the maternal grandmother after the child's adoption by the paternal grandparents."

In *Farley,* the natural mother postulates two assignments of error:

"I. The trial court erred by accepting jurisdiction to hear and grant judgment in favor of the biological paternal grandparents for visitation of the biological grandchildren after they had been adopted by a stepfather.

"II. The trial court erred as a matter of law in granting visitation to the biological grandparents of children who were adopted by a stepfather."

In each of these cases there are parallel assignments of error.

The whole issue of grandchild visitation has only recently emerged in the law. See *Hollingsworth v. Hollingsworth* (1986), 34 Ohio App.3d 13, 516 N.E.2d 1250, interpreting former R.C. 3109.05(B) authorizing "any other person having an interest in the welfare of the child" to be granted visitation. And it was 1990 before grandparents were specifically named as having justiciable rights in visitation. R.C. 3109.051(B). This provision, however, is limited to divorce, dissolution of marriage, legal separation, annulment or child support proceedings involving a child. Adoption is not mentioned. Thus it is that in each of these cases the parties attempt to invoke the jurisdiction of the domestic relations court, not the adoption-granting probate court.

The jurisdictional conflict between the domestic relations court (exercising its continuing jurisdiction) and the adoption court (exercising authority to terminate parental rights and establish new, independent parentage) was recognized and philosophically resolved in 1958.

"A final adoption order results in a legal sense, therefore, in terminating the child and parent relationship between the child and its natural parents and creating an entirely new child and parent relationship between the child and its adoptive parents. Section 3705.18, Revised Code, even provides that a new birth certificate be issued for the child.

"If we accept the reasoning of the Court of Appeals in these cases, we are confronted with the anomalous situation of a divorce court having continuing jurisdiction over the custody of a minor child in a divorce action but having no jurisdiction to hear and determine an adoption proceeding involving the same child and a Probate Court having exclusive jurisdiction over adoption proceedings but being unable to exercise it with reference to such child because of the continuing jurisdiction of the divorce court. This would make it impossible for a minor child of divorced parents to be legally adopted. * * *" *In re Adoption of Biddle* (1958), 168 Ohio St. 209, 214–215, 6 O.O.2d 4, 7–8, 152 N.E.2d 105, 109–110.

More recently the supreme court has revisited the issue. *In re Adoption of Ridenour* (1991), 61 Ohio St.3d 319, 574 N.E.2d 1055. There the juvenile court terminated parental rights with respect to two infants, granting custody to the appropriate human services department, but reversed visitation rights to the biological grandparents of the infants. When adoption proceedings by strangers were filed in the probate court, the biological grandparents sought to intervene. That motion was granted, and the court subsequently dismissed the adoption. The court of appeals affirmed, but the supreme court reversed, finding that the probate court abused its discretion by finding that adoption would not be in the children's best interest. The court noted, "In fact, it seems that in denying the adoptions, the judge elevated the rights of the grandparents over the best interests of the children." *Id.* at 322, 574 N.E.2d at 1059.

Going further, the court concluded that the biological grandparents have no standing to challenge the adoption or request legally enforceable visitation rights. This, even though they claimed favor of Civ.R. 24(A)(2), postulating an interest in the "transaction," *i.e.*, the visitation component of custody.

The only distinction between *Ridenour* and the cases *sub judice* is that here they are not total "stranger adoptions," *i.e.*, adoptions where blood relatives are not involved as adopters and all parental rights of both parents are terminated.

In this regard, each of these cases is of first impression. In *Farley* (stepparent adoption), the natural mother is still the mother, and biological relationships survive the adoption. In *Reynard* (grandparent adoption), the adopters remain as biological relatives.

The attempt to distinguish between the two cases on the factual difference that in one (*Reynard*), both parental rights are extinguished and there is no remaining bloodline (the "grandparent" being in effect a "stranger"), and in the other, (*Farley*), the mother is still the mother, is a distinction without a difference in the face of the compelling language of the statute.

Revised adoption laws have recognized the emergence of grandparents as significant actors on the scene.

We read R.C. 3107.15 in search of relief for grandparents whose grandchildren have been adopted.

"(A) A final decree of adoption and an interlocutory order of adoption that has become final, issued by a court of this state, shall have the following effects as to all matters within the jurisdiction or before a court of this state:

"(1) Except with respect to a spouse of the petitioner and relatives of the spouse, to relieve the biological or other legal parents of the adopted person of all parental rights and responsibilities, and to terminate all legal relationships between the adopted person and his relatives, including his biological or other legal parents, so that the adopted person thereafter is a stranger to his former relatives for all purposes including inheritance and the interpretation or construction of documents, statutes, and instruments, whether executed before or after the adoption is decreed, which do not expressly include the person by name or by some designation not based on a parent and child or blood relationship[.]"

Unfortunately, we read R.C. 3107.15 as clearly and unequivocally denying standing (and hence potential relief) to grandparents, where their bloodline descendant has had his or her parental rights terminated by adoption. The statute can mean nothing other than that the bloodline relatives of the child whose parent has had parental rights terminated are, as relatives, likewise terminated. Note that in addition to specifically including relatives among those whose rights are terminated, the statute also terminates rights of inheritance from such natural grandparents. By contrast the legislature has seen fit to preserve grandparental rights in adoption proceedings where the parent in the same bloodline is deceased. R.C. 3107.15(B).

By expressly dealing with the parental death question the legislature demonstrates an intent to exclude grandparents in the cases *sub judice*.

We are impelled by the specific language of R.C. 3107.15 and the rationale of *Ridenour* to conclude that relatives of parents whose parental rights are terminated have no standing in any Ohio court to assert visitation rights. In many instances this conclusion works a disservice to both the child and the grandparents. See dissent of Justice Holmes in *Ridenour*.

The remedy, however, lies with the legislature, where efforts would appropriately be directed to modifying the clear provisions of the adoption code.

Because we conclude that the adoption statute terminates the jurisdiction of all courts with respect to the ancestors of the terminated parent, we conclude that the Licking County Common Pleas Court, Division of Domestic Relations, has no subject matter jurisdiction to make orders with respect to visitation.

The assignments of error in each case are sustained and the judgments are reversed.

*Judgments reversed.*

SMART and WILLIAM B. HOFFMAN, JJ., concur.