JOURNAL ENTRY AND OPINION
Wendy Bynum appeals from a judgment of the juvenile court, that permanently terminated her parental rights and granted permanent custody of her daughter, Aisha Bynum, to the Cuyahoga County Department of Children and Family Services. After reviewing the record before us, we conclude the trial court did not abuse its discretion and affirm the judgment.
On July 22, 1995, Wendy Bynum gave birth to Aisha Bynum, and, at that time, both mother and child had a positive toxicology for cocaine. As a result, Cuyahoga County Department of Children and Family Services removed Aisha from her mother's care, placed her in a foster home, and instituted a case plan requiring the mother to complete drug treatment, and both aftercare and parenting classes with the ultimate goal of reunification. After the mother's successful completion of the case plan, CCDCFS returned Aisha to her mother with protective supervision in January, 1996. Thereafter, on July 3, 1996, the juvenile court conducted a hearing to terminate CCDCFS' custody over Aisha, but the mother failed to appear at that hearing, and her whereabouts were unknown until July 14, 1996, when Cleveland Police officers found her unconscious in her car with cocaine on her lap, and Aisha in a car seat, dirty, and with a bottle of spoiled milk.
The record further reveals that on July 18, 1996, CCDCFS filed a complaint against the mother alleging that Aisha is a neglected child and again moved for temporary custody of the child. The court granted the motion and placed Aisha with CCDCFS.
Following her conviction of possession of drugs and drug abuse, the general division of the common pleas court sentenced the mother to prison for eight months. Upon her release, the mother went to Oriana House, where she received further drug treatment and counseling. According to Synella Wilson, a CCDCFS social worker assigned to this case, CCDCFS considered reunification for a second time; however, on November 26, 1997, after receiving a seven-day pass from Oriana House, the mother failed to return. Wilson testified that the Cleveland Police responded to West 114th Street on December 2, 1997, and found the mother in an abandoned apartment building, four months pregnant, overdosed, and with a heroin needle stuck in her thigh.
The record further reflects that Aisha had been in foster care almost continuously since birth, because no relatives were available to care for her. Wilson testified on cross-examination that CCDCFS contacted the maternal grandfather, Bruce Bynum, in 1995, and again in January, 1998, to inquire whether he and his wife would be willing to assume permanent custody of Aisha. On both occasions Mr. Bynum stated that he would not be interested in assuming custody of the child and that he did not want visitation. These events led CCDCFS to file a motion to modify temporary custody to permanent custody on February 19, 1998. The juvenile court conducted a hearing on the motion on June 24, July 19, September 23, and October 29, 1998. On November 13, 1998, the court granted CCDCFS permanent custody of Aisha.
Mother now appeals and sets forth two assignments of error for our review. The first states:
 THE COURT IMPROPERLY FAILED TO DISMISS THE COMPLAINT PER JUVENILE RULE 29(F)(2)(d) BECAUSE THE EVIDENCE DEMONSTRATED AT TRIAL THAT THE CHILD WAS NO LONGER AT RISK FROM CONDITIONS RECITED IN THE COMPLAINT AND THAT DISMISSAL WOULD HAVE BEEN IN THE BEST INTERESTS OF THE CHILD AND COMMUNITY.
The mother contends that the court abused its discretion by failing to dismiss the complaint against her because she claims the testimony demonstrated that she has complied with her case plan in that she had a residence, had enrolled in psychological counseling, attended a drug treatment program, and no evidence of involvement in prostitution existed at the time of the hearing; thus, based on the evidence, she urged that Aisha should be returned to her.
CCDCFS maintains that the court did not abuse its discretion when it adjudicated the matter pursuant to Juv.R. 29(F)(2)(a) because the court considered all the evidence presented which included not only the evidence of the mother's status at the time of the hearing, but also the fact that on two prior occasions, the mother had not properly cared for her child. The state posits the court's decision had been made in the best interests of the child.
Hence, we are concerned with whether the court abused its discretion when it granted permanent custody of Aisha to CCDCFS and declined to dismiss the complaint.
Juv.R. 29(F) establishes the procedure to be followed in juvenile court for matters involving an adjudicator hearing. If a complaint alleges abuse, neglect or dependency, the court shall conduct an adjudacatory hearing and upon determination of the issues, the court, in accordance with Juv.R. 29(F)(2), may exercise its discretion to do one of the following:
 (a) Enter an adjudication and proceed forthwith to disposition; (b) Enter an adjudication and continue the matter for disposition for not more than six months and may make appropriate temporary orders; (c) Postpone entry of adjudication for not more than six months; (d) Dismiss the complaint if dismissal is in the best interest of the child and the community.
This rule vests the juvenile court with the opportunity to exercise its discretion with respect to disposition. In the case of In re Adoption of Ridenour (1991), 61 Ohio St.3d 319, the court stated:
 [A]buse of discretion implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable.
In this case, Wendy Bynum argues that, at the time of the dispositional hearing, she lived in a half-way house, continued to care for and support her youngest daughter, remained sober and employed and yet, despite these circumstances, the court awarded permanent custody to CCDCFS. It found:
 The child is not abandoned or orphaned and cannot or should not be placed with either parent within a reasonable period of time as follows: mother and alleged father have failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the home. The alleged father has failed to establish paternity, does not provide support, does not visit, and does not communicate with the child. The mother has failed to attend and successfully complete her referred services as set forth in the case plan, the child's return to the home would be contrary to her best interest and welfare and there are no relatives willing or able to care for the child at the present time.
An appellate court will not reverse a trial court's determination concerning parental rights and child custody unless the determination is not supported by sufficient evidence to meet the clear and convincing standard of proof. See In re Adoption ofHolcomb (1985), 18 Ohio St.3d 361, and In re Ball (1982), 5 Ohio App.3d 56.
Further, the award of permanent custody of a child is governed by R.C. 2151.414 (B) which provides in pertinent part:
 (B) The court may grant permanent custody of a child to a movant if the court determines * * * by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that * * *: (1) * * * the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents; * * *.
Additionally, Wilson testified that Aisha is well adjusted to her foster family, that the foster family is interested in adopting her, and that it would not be in her best interest to sever the stability she has established with that family. Also, the child's interaction with her mother had been limited due to the mother's failure to follow her case plan. Hence, we conclude the court did not abuse its discretion when it awarded permanent custody of Aisha to CCDCFS. Accordingly, this assignment of error is overruled.
The second assignment of error states:
 THOUGH GRANDPARENTS DO NOT HAVE RIGHTS TO THE CHILD SUPERIOR TO THE AGENCY THAT PETITIONS FOR PERMANENT CUSTODY, THE COURT IMPROPERLY DID NOT GIVE CUSTODY TO THE GRANDFATHER WHO EXPRESSED A CLEAR INTEREST IN CUSTODY AT TRIAL. ABSENT A SHOWING OF UNSUITABILITY OR OTHER CAUSE, WHERE A GRANDPARENT EXPRESSES A DESIRE OR WILLINGNESS TO ASSUME THE PARENTAL ROLE, PERMANENT CUSTODY WAS IMPROPERLY GIVEN TO THE COUNTY.
Wendy contends Bruce Bynum, Aisha's maternal grandfather, submitted a letter evidencing an interest in custody of Aisha, and therefore the court abused it discretion in awarding custody to the CCDCFS.
CCDCFS maintains that because Mr. Bynum declined the opportunity to parent Aisha in 1995 and again in January, 1998, therefore, the court properly granted custody to CCDCFS.
The issue presented for our review concerns whether the court abused its discretion when it declined to award Mr. Bynum custody of Aisha.
R.C. 2151.28(B)(1) provides in pertinent part:
 The court shall determine whether there are any relatives of the child who are willing to be temporary custodians of the child. If any relative is willing to be a temporary custodian, the child otherwise would remain or be placed in shelter care, and the appointment is appropriate, the court shall appoint the relative as temporary custodian of the child, unless the court appoints another relative as custodian.
The record reveals CCDCFS approached Mr. Bynum in 1995 and asked him whether he would take custody of Aisha; Mr. Bynum informed CCDCFS he did not want custody of her and did not indicate a desire to have visitation with her. Additionally, Mr. Bynum testified that when Synella Wilson approached him in January 1998, he stated that he could not take Aisha at that point. In September, 1998, Mr. Bynum submitted a letter to the court on Wendy's behalf, in which he stated he believed Wendy is capable of caring for Aisha and that he and his wife would be willing to assist her. He did not state, contrary to his testimony, that he and his wife would be willing to assume permanent custody of Aisha.
We have reviewed the record in this case and conclude that although Mr. Bynum presented some evidence that he did want Aisha, the trial court did not abuse its discretion in determining that it is in the best interest of the child to be placed in the permanent custody of CCDCFS. Accordingly, this assignment of error is overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Juvenile Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, J., and ANNE L. KILBANE, J., CONCUR.
 ___________________________________ PRESIDING JUDGE, TERRENCE O'DONNELL