# In re L.H.

[Cite as *In re L.H.*, 183 Ohio App.3d 505, 2009-Ohio-3046.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23157.

Decided June 19, 2009.

Kent J. Depoorter, for appellants, Katrina and Robert Ross.

Mark A. Fisher, for appellee, Neil Boggs.

GRADY, Judge.

{¶ 1} This is an appeal from an order of the juvenile court granting rights of visitation with a minor child to a person who is not the child's parent, pursuant to R.C. 3109.051(B)(1).

{¶ 2} L.H. was born on January 23, 2001. Custody of L.H. was subsequently awarded by the juvenile court to appellant Katrina Ross, who was then married to appellee, Neil Boggs. Neither is the biological parent of L.H.

{¶ 3} Ross and Boggs were divorced in October 2003. Boggs thereafter moved for and was awarded rights of visitation with L.H. by the juvenile court.

{¶ 4} Katrina Ross married Robert Ross in 2005. In July 2007, the probate court granted the Rosses' petition to adopt L.H. The Rosses thereafter moved to terminate Boggs's right of visitation with L.H. that the juvenile court had awarded.

{¶ 5} The motion was referred to a magistrate for hearings. The magistrate filed a decision finding that Boggs and L.H. had formed a positive and significant bond, that L.H. viewed Boggs as a father figure, and that both Robert Ross and Boggs had a positive influence on L.H. The magistrate noted that the guardian ad litem for L.H. in the proceeding stated that terminating Boggs's right of visitation would have a detrimental effect on L.H. The magistrate found that it would be in the best interest of L.H. to deny the motion that the Rosses filed to terminate Boggs's right of visitation. The juvenile court adopted the decision as the court's judgment pursuant to Juv.R. 40(D)(4)(e).

{¶ 6} Katrina and Robert Ross filed timely objections to the magistrate's decision. Their first objections were that the decision was against the manifest weight of the evidence. When a transcript of the proceedings before the magistrate was filed, the Rosses filed supplemental objections that the decision was not supported by clear and convincing evidence.

{¶ 7} The juvenile court overruled the objections that the Rosses filed, relying on R.C. 3109.051(B)(1). That section provides:

{¶ 8} "In a divorce, dissolution of marriage, legal separation, annulment, or child support proceeding that involves a child, the court may grant reasonable companionship or visitation rights to any grandparent, any person related to the child by consanguinity or affinity, or any other person other than a parent, if all of the following apply:

{¶ 9} "(a) The grandparent, relative, or other person files a motion with the court seeking companionship or visitation rights.

{¶ 10} "(b) The court determines that the grandparent, relative, or other person has an interest in the welfare of the child.

{¶ 11} "(c) The court determines that the granting of the companionship or visitation rights is in the best interest of the child."

{¶ 12} In overruling the Rosses' objections, the juvenile court wrote:

{¶ 13} "The Court finds Mr. Boggs is not related to the child by consanguinity or affinity, but has acted as a father figure for the child since said child was taken into the custody of Mrs. Ross. Tr. Vol. I, pg. 92. The record shows Mr. Boggs motioned for visitation on July 30, 2004, and was granted visitation on March 10, 2005. The Court finds from the record that Mr. Boggs has an interest in the welfare of the child as he has acted as a father figure for said child and is very bonded with said child. Tr. Vol. I, Pg. 17, 26, 92–93. Further, due to the role Mr. Boggs has played in said child's life the Court finds it would be in the best interest of said child to continue visitation with Mr. Boggs, which the Court finds to be a positive relationship with a father figure. Further, the Court does not find any credible evidence that said child's visitation with Mr. Boggs is detrimental to said child. Balancing the factors listed in R.C. 3109.051(D), the Court finds that visitation is proper under the analysis of R.C. 3109.051."

{¶ 14} The juvenile court adopted the magistrate's decision. The Rosses filed a timely notice of appeal.

Assignment of Error

{¶ 15} "The trial court erred in denying appellant's motion to terminate visitation as the juvenile court has no jurisdiction to order visitation post adoption pursuant to Ohio Revised Code 3107.15."

{¶ 16} R.C. 3107.15(A) states:

{¶ 17} "A final decree of adoption and an interlocutory order of adoption that has become final as issued by a court of this state, or a decree issued by a jurisdiction outside this state as recognized pursuant to section 3107.18 of the Revised Code, shall have the following effects as to all matters within the jurisdiction or before a court of this state, whether issued before or after May 30, 1996:

{¶ 18} "(1) Except with respect to a spouse of the petitioner and relatives of the spouse, to relieve the biological or other legal parents of the adopted person of all parental rights and responsibilities, and to terminate all legal relationships between the adopted person and the adopted person's relatives, including the adopted person's biological or other legal parents, so that the adopted person thereafter is a stranger to the adopted person's former relatives for all purposes including inheritance and the interpretation or construction of documents, statutes, and instruments, whether executed before or after the adoption is decreed, which do not expressly include the person by name or by some designation not based on a parent and child or blood relationship."

{¶ 19} The Rosses argue that the juvenile court erred in continuing its prior order of visitation in favor of Boggs following the decree of the probate court granting their petition to adopt L.H. because R.C. 3107.15(A)(1) prevents the juvenile court from awarding visitation to Boggs pursuant to R.C. 3109.051.

{¶ 20} R.C. 3107.15(A) provides that its prohibitions apply "to all matters within the jurisdiction or before a court of this state." R.C. 2151.23(F)(1) provides that the juvenile court shall exercise its jurisdiction in child-custody matters in accordance with several sections of the Revised Code. R.C. 3109.051(B)(1) is not among them.

{¶ 21} Juv.R. 40(D)(3)(b)(iv) states:

{¶ 22} *"Waiver of right to assign adoption by court as error on appeal.* Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Juv.R. 40(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b)."

{¶ 23} The Rosses did not argue as grounds for their objections to the magistrate's decision that R.C. 3107.15 prevents the juvenile court from applying R.C. 3109.051 to grant rights of visitation to Boggs. We are nevertheless permitted to review the error assigned for plain error. In appeals of civil cases the courts apply the plain-error test "with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *LeFort v. Century 21–Maitland Realty Co.* (1987), 32 Ohio St.3d 121, 124, 512 N.E.2d 640.

{¶ 24} We find that the plain-error test is satisfied. In *In re Adoption of Ridenour* (1991), 61 Ohio St.3d 319, 574 N.E.2d 1055, the Supreme Court held that following a child's adoption by strangers to her family, a juvenile court abused its discretion in ordering that visitation with the child's biological grandparents would continue after the adoption pursuant to R.C. 3109.051(B)(1).

{¶ 25} The *Ridenour* court pointed out that R.C. 3109.051(B)(1) addresses visitation in the context of a domestic relations proceeding, not adoption. In domestic relations proceedings, it is generally in the child's best interest to continue existing relationships. "By contrast, the adoption statute seeks to transform the child's collection of relationships and, in effect, give the child a new identity. While this goal may not be fully attainable, particularly in the context of children who are not adopted immediately after birth, it must be pursued. Otherwise, children will become bewildered as adults battle for their time and affection, adoptive parents will not enjoy the same autonomy as natural parents, and potential adoptive parents may be discouraged from adopting for fear that they will have to compete with the child's biological family for the child's love and respect." Id. at 327, 574 N.E.2d 1055.

{¶ 26} L.H. was not adopted by strangers; Katrina Ross has acted as L.H.'s mother since his birth. However, the right of visitation that the juvenile court awarded to Boggs contains a potential to introduce significant stresses in L.H.'s new parental relationship with Katrina and Robert Ross. The magistrate noted that the guardian ad litem recommended a visitation order in part because "the Rosses likely would not permit any visitation with Mr. Boggs, absent a court order." The fact that Boggs occupies a father-figure role for L.H., while positive in and of itself, nevertheless threatens confusion for L.H. regarding his relationship with Robert Ross, his adoptive father. That confusion would be an even more substantial disruption of L.H.'s new adoptive family relationship than the grandparental visitation at issue in *Ridenour*.

{¶ 27} As a court inferior to the Supreme Court of Ohio, we are bound to follow and apply the holding in *Ridenour*. However, we agree with the Court of Appeals of Licking County that the effect of R.C. 3107.15(A) is to deny standing to former relatives of an adopted child to seek visitation pursuant to R.C. 3107.051(B). *Farley v. Farley* (1992), 85 Ohio App.3d 113, 619 N.E.2d 427. The same would apply to an "other person" such as Boggs, whose grounds for seeking visitation arose out of the prior family relationship

{¶ 28} The juvenile court erred when it denied the Rosses' motion to terminate Boggs's right of visitation with L.H. The assignment of error is therefore sustained. The judgment of the juvenile court is reversed, and the matter is remanded to the juvenile court on our special mandate to vacate all prior orders granting Boggs rights of visitation with L.H.

Judgment reversed
and cause remanded.

FROELICH and WOLFF, JJ., concur.

WILLIAM H. WOLFF JR., J., retired, of the Second District Court of Appeals, sitting by assignment.

FROELICH, Judge, concurring.

{¶ 29} I would find, pursuant to *Ridenour*, that a juvenile court does not have the authority to affect postadoption visitation.

{¶ 30} In the absence of a patent and unambiguous lack of jurisdiction, a court having general subject-matter jurisdiction can determine its own jurisdiction. *State ex rel. Plant v. Cosgrove*, 119 Ohio St.3d 264, 2008-Ohio-3838, 893 N.E.2d 485. Although the juvenile court has general subject-matter jurisdiction to grant visitation in situations where it has awarded permanent custody, once there has been an adoption, the court has no jurisdiction to grant visitation. This is true even when such visitation is granted prior to the adoption and even if the court believes it would be in the best interest of the child to continue the visitation. See, e.g., *In re Adoption of Hilliard*, 154 Ohio App.3d 54, 2003-Ohio-4471, 796 N.E.2d 46, ¶ 8–9.

{¶ 31} The *Ridenour* court's statement, 61 Ohio St.3d at 324, 574 N.E.2d 1055, that the "juvenile court abused its discretion in ordering that grandparent visitation rights be continued post-adoption" was based on the Supreme Court's determination that the juvenile court did not have the jurisdiction to control postadoption matters and, thus, that the juvenile court's determination that it did have jurisdiction was an abuse of its discretion to determine its own jurisdiction.

{¶ 32} Whether this is wise policy is not a question that this panel, grandparents all, is permitted to address. In fact, even *Ridenour* acknowledged that the continuation of certain preadoption relationships "can be of significant value to a child's development"; however, the "court cannot permit such a result unless the legislature modifies R.C. 3107.15." *Ridenour*, 61 Ohio St.3d at 328, 574 N.E.2d 1055.