[Cite as *Davis v. Nathaniel*, 2020-Ohio-6858.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

RACHEL DAVIS

    Appellee

v.

TAMMIE NATHANIEL, et al.

    Appellant

C.A. No.    29761

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DR-2019-11-3155

DECISION AND JOURNAL ENTRY

Dated: December 23, 2020

TEODOSIO, Judge.

{¶1} Tammie and Jeff Nathaniel appeal from the order of the Summit County Court of Common Pleas, Domestic Relations Division. We reverse.

I.

{¶2} Rachel Davis and Tammie Nathaniel are sisters. A third sister, who has passed away, had three children, who were adopted by Ms. Nathaniel and her husband, Jeff Nathaniel, in 2014. In November 2019, Ms. Davis filed a complaint as the maternal aunt of the three minor children, requesting legal custody, shared parenting, and companionship. A hearing was held before the magistrate in January 2020, and a magistrate's order was issued. The Nathaniels filed a motion to set aside the magistrate's order, objecting to paragraph 10 of the magistrate's order, which had allowed for Ms. Davis and a guardian ad litem to interact with the children for the purposes of permitting the guardian ad litem to complete an investigation. The Nathaniels also filed a motion for judgment on the pleadings. In May 2020, and with leave of court, Ms. Davis

filed an amended complaint requesting only companionship with the children. The Nathaniels moved to dismiss the amended complaint.

{¶3} In its order of June 6, 2020, the trial court denied the Nathaniels' motions and overruled their objection to paragraph 10 of the magistrate's order. The trial court further construed the amended complaint as seeking an action for companionship rights pursuant to R.C. 3109.11. The Nathaniels now appeal, raising one assignment of error.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED AS A MATTER OF LAW BY DETERMINING THAT MS. DAVIS HAS STANDING TO PURSUE COMPANIONSHIP AGAINST MARRIED PARENTS OF ADOPTED CHILDREN AND FURTHER ORDERING A GUARDIAN AD LITEM TO WITNESS THOSE PARENTS' CHILDREN INTERACTING WITH MS. DAVIS AGAINST THE PARENTS' WISHES.

{¶4} The Nathaniels argue the trial court erred in determining that Ms. Davis had standing to pursue companionship with the Nathaniels' children. We agree.

{¶5} At the outset, we must determine whether the trial court's order constituted a final appealable order. R.C. 2505.02(B)(2) provides, in pertinent part: "An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is * * * [a]n order that affects a substantial right made in a special proceeding * * *."

{¶6} Pursuant to R.C. 2505.02(A)(2), a "'[s]pecial proceeding' means an action or proceeding that is specially created by statute and that prior to 1853 was not denoted as an action at law or a suit in equity." Because this action was construed by the trial court to be filed pursuant to R.C. 3109.11, it is a proceeding created by statute, and it does not appear that prior to 1853 such an action was denoted as an action at law or a suit in equity. We therefore conclude that the action constitutes a special proceeding under R.C. 2505.02(A)(2).

{¶7}     As defined by R.C. 2502.02(A)(1), a "'[s]ubstantial right' means a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." "A parent's relationship with his or her child is among the 'associational rights' sheltered by the Fourteenth Amendment to the United States Constitution against unwarranted usurpation, disregard, or disrespect by the state." *In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, ¶ 17, citing *M.L.B. v. S.L.J.*, 519 U.S. 102, 116 (1996). "We have found that the due-process rights provided by the Fourteenth Amendment and those provided by Article I, Section 16 of the Ohio Constitution are coextensive." *Id.*, citing *Direct Plumbing Supply Co. v. Dayton*, 138 Ohio St. 540, 544–545 (1941). "The United States Supreme Court has stated that parents' interest in the care, custody, and control of their children 'is perhaps the oldest of the fundamental liberty interests recognized by this Court.'" *Id.* at ¶ 19, quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000). At issue in the matter sub judice is the consequence of the trial court's order, that being that said order dictates that Ms. Davis "will have to have interaction with the children for purposes of allowing the [guardian ad litem] to complete the investigation * * *." We conclude this order affects a substantial right of the Nathaniels by mandating their children's association with others against the wishes of the parents, thereby impacting their relationship with the children and their interests in the care and control of their children. As such, the order of the trial court is reviewable by this Court under R.C. 2505.02(B)(2).

{¶8}     We next turn our attention to the Nathaniels' argument that the trial court erred in determining that Ms. Davis had standing to pursue companionship with the Nathaniels' children. The trial court found that Ms. Davis, as the maternal aunt of the minor children and sister of their deceased mother, had standing to pursue companionship rights pursuant to R.C. 3109.11.

{¶9}   R.C. 3109.11 provides for the companionship or visitation rights of grandparents and other relatives when a parent is deceased, setting forth in pertinent part:

> If either the father or mother of an unmarried minor child is deceased, the court of common pleas of the county in which the minor child resides may grant the parents and other relatives of the deceased father or mother reasonable companionship or visitation rights with respect to the minor child during the child's minority if the parent or other relative files a complaint requesting reasonable companionship or visitation rights and if the court determines that the granting of the companionship or visitation rights is in the best interest of the minor child. In determining whether to grant any person reasonable companionship or visitation rights with respect to any child, the court shall consider all relevant factors, including, but not limited to, the factors set forth in division (D) of section 3109.051 of the Revised Code. Divisions (C), (K), and (L) of section 3109.051 of the Revised Code apply to the determination of reasonable companionship or visitation rights under this section and to any order granting any such rights that is issued under this section.

> The remarriage of the surviving parent of the child or the adoption of the child by the spouse of the surviving parent of the child does not affect the authority of the court under this section to grant reasonable companionship or visitation rights with respect to the child to a parent or other relative of the child's deceased father or mother.

These companionship or visitation rights are a product of the familial relation between the minor child and the deceased parent's family.  The issue before this Court is whether the final decree of adoption supersedes this relation, as well as the companionship or visitation rights available pursuant to R.C. 3109.11.  We conclude that it does so.

{¶10}   R.C. 3107.15 provides, in pertinent part:

> (A) A final decree of adoption and an interlocutory order of adoption that has become final as issued by a court of this state, or a decree issued by a jurisdiction outside this state as recognized pursuant to section 3107.18 of the Revised Code, shall have the following effects as to all matters within the jurisdiction or before a court of this state, whether issued before or after May 30, 1996:

> > (1) Except with respect to a spouse of the petitioner and relatives of the spouse, to relieve the biological or other legal parents of the adopted person of all parental rights and responsibilities, and to terminate all legal relationships between the adopted person and the adopted person's relatives, including the adopted person's biological or other

legal parents, so that the adopted person thereafter is a stranger to the adopted person's former relatives for all purposes including inheritance and the interpretation or construction of documents, statutes, and instruments, whether executed before or after the adoption is decreed, which do not expressly include the person by name or by some designation not based on a parent and child or blood relationship * * *.

{¶11} "A final adoption order results in a legal sense, therefore, in terminating the child and parent relationship between the child and its natural parents and creating an entirely new child and parent relationship between the child and its adoptive parents." *Farley v. Farley*, 85 Ohio App.3d 113, 115 (5th Dist.1992). "[R.C. 3107.15] can mean nothing other than that the bloodline relatives of the child whose parent has had parental rights terminated are, as relatives, likewise terminated." *Id.* at 116. Therefore, "relatives of parents whose parental rights are terminated have no standing in any Ohio court to assert visitation rights." *Id.*

{¶12} "[T]he adoption statute seeks to transform the child's collection of relationships and, in effect, give the child a new identity. While this goal may not be fully attainable, particularly in the context of children who are not adopted immediately after birth, it must be pursued. Otherwise, children will become bewildered as adults battle for their time and affection, adoptive parents will not enjoy the same autonomy as natural parents, and potential adoptive parents may be discouraged from adopting for fear that they will have to compete with the child's biological family for the child's love and respect." *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 327 (1991). Although the children here were not adopted by strangers, the rationale remains the same, as an award of visitation contains a potential to introduce significant stress into the new parental relationship and threatens confusion and disruption for the new adoptive family relationship. *See In re L.H.*, 183 Ohio App.3d 505, 2009-Ohio-3046, ¶ 26 (2d.Dist.). We note, however, that this case presents a unique circumstance: although the bloodline relation with the children by virtue of

being a relative of the biological parent is terminated by action of the terminated parental rights "for all purposes including inheritance and the interpretation or construction of documents, statutes, and instruments," R.C. 3107.15(A)(1), Ms. Davis' bloodline relation to her sister Tammie remains unaffected, and thus she continues to be the maternal aunt of the adopted children through that relation.

{¶13} We conclude the trial court erred in determining that Ms. Davis had standing to pursue companionship rights pursuant to R.C. 3109.11. The Nathaniels' assignment of error is sustained.

### III.

{¶14} The Nathaniels' assignment of error is hereby sustained. The order of the Summit County Court of Common Pleas, Domestic Relations Division is reversed.

Judgment reversed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

THOMAS A. TEODOSIO
FOR THE COURT

CARR, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

LEE M. GROSSCUP, Attorney at Law, for Appellants.

CHRISTINE D. FINAN, Attorney at Law, for Appellee.