DECISION.
Taryn Jackson appeals the probate court's denial of her Civ.R. 60(B) motion for relief from various orders pertaining to the adoption of her child. We begin our analysis with a brief review of the facts and procedural posture of the case.
Jackson, a 22-year-old single mother, became pregnant with her second child in early 1997.[1] On August 25, 1997, Jackson telephoned Carolyn Franke of Private Adoption Services, Inc., to obtain information about placing the child for adoption. Jackson met with Franke twice in September 1997. On the second visit, Franke gave Jackson letters from three couples interested in adopting a child.
On October 27, 1997, at a Cincinnati hospital, Jackson gave birth to a son. On the same day, Franke received a call from a hospital social worker indicating that Jackson's son had been born and that Jackson wanted to place him for adoption. Franke was surprised to hear this about Jackson, because Franke had assumed that Jackson had made other arrangements for her child. Franke called Jackson at the hospital and asked her if she wanted to go through with the adoption. When Jackson stated that she did, Franke asked Jackson whether she had a preference about which of the three couples would become the adoptive parents. Jackson indicated that it did not matter to her if all of the couples could provide good families. After Jackson repeated to Franke her wish to place the child for adoption, Franke told her that an adoption assessor would meet with her that day or the next morning. Jackson then executed an authorization allowing prospective adoptive parents Douglas and Carol Moser of Pennsylvania to visit with her child at the hospital. Jackson also signed an authorization allowing Franke to remove the child from the hospital.
On October 28, 1997, Teresa Mussio, an adoption assessor affiliated with Private Adoption Services, Inc., met with Jackson at the hospital. At that time, Jackson executed Ohio Department of Human Services form 1693, acknowledging that she had been provided with written materials on adoption and was able to discuss and ask questions about the adoption process, and that she was fully aware of the ramifications of consenting to the adoption of her child. Jackson was discharged from the hospital that day, without her child.
Franke arranged for the child to be separately discharged from the hospital in the care of the Mosers. The child's discharge occurred on October 29, 1997.
On October 31, 1997, Jackson executed and filed in the probate court a written consent to the adoption of her child. Jackson also filed an application for the approval of the placement of her child with the Mosers, asserting that such a placement would be in the best interest of the child. On that same date, probate court magistrate Rogena Stargel conducted a placement hearing, questioning Jackson extensively about her decision to place her child for adoption. At the end of the hearing, Magistrate Stargel found that Jackson had voluntarily given her consent and that "[Jackson] was sure that this [was] what she wanted to do." The probate court then approved the placement of Jackson's child with the Mosers.
On November 14, 1997, Jackson filed in the probate court a notice of the withdrawal of her consent to the adoption and an application to set aside the placement of her child with the Mosers. On November 17, 1997, the Mosers filed with the probate court a petition for the adoption of Jackson's child.
On December 4, 1997, magistrate Mark Combs conducted a hearing on Jackson's motions to withdraw her consent and to set aside the placement of her child. At the hearing, Jackson, the Mosers, Mussio, and Magistrate Stargel testified. On December 15, 1997, Magistrate Combs issued a decision denying Jackson's motions. On January 6, 1998, the probate court adopted Magistrate Combs's decision, after receiving no written objections to the decision from Jackson. On January 28, 1998, Jackson appealed the probate court's January 6, 1998, order under case number C-980077.
In May 1998, before the appeal was decided, Jackson filed in the probate court a motion for relief from judgment pursuant to Civ.R. 60(B) with respect to (1) the October 31, 1997, entry approving placement; (2) the October 31, 1997, consent executed by Jackson; (3) the December 15, 1997, decision of the magistrate denying Jackson's withdrawal of consent; and (4) the January 6, 1998, entry adopting the magistrate's decision. At the same time, Jackson filed in this court a "motion for remand" so that the probate court could rule on her Civ.R. 60(B) motion. We granted Jackson's motion and remanded this case to the probate court solely for a decision on Jackson's Civ.R. 60(B) motion. After a hearing, the probate court denied the motion. Jackson has now appealed that judgment under the number C-990008.
Jackson's sole assignment of error contends that the probate court erred by denying her Civ.R. 60(B) motion. Jackson claims that the evidence presented to the probate court demonstrated that her consent to the adoption was not voluntarily or knowingly granted because, at the time of the consent, she was in a state of dysfunctional denial. Jackson further claims that her consent to the adoption was invalid because she was under the influence of professionals who did not act in her interest. Finally, Jackson claims that the child was placed with the adoptive couple in violation of R.C. 5103.16, and that the adoption is, therefore, void.
Parental consent to an adoption order "is [a] jurisdictional prerequisite which, if absent, allows the order to be attacked as void." McGinty v. Jewish Children's Bur. (1989), 46 Ohio St.3d 159, 545 N.E.2d 1272. The consent of a natural parent to an adoption may be invalidated by a showing of duress or undue influence. Morrow v. Family Community Serv. of CatholicCharities, Inc. (1986), 28 Ohio St.3d 247, 504 N.E.2d 2. Whether a challenge to an adoption consent is based on fraud, undue influence, or some other consent-vitiating factor, the real and ultimate fact to be determined is whether the party affected was denied the exercise of his or her free will. In re Adoption ofZschach (1996), 75 Ohio St.3d 648, 665 N.E.2d 1070, citingTallmadge v. Robinson (1952), 158 Ohio St. 333, 109 N.E.2d 496. Once a natural mother has entered her consent to an adoption in open court, she has the burden to establish duress or undue influence by clear and convincing evidence. See In re Adoption ofHolcomb (1985), 18 Ohio St.3d 361, 481 N.E.2d 613.
The record reveals that Jackson consulted with Franke, Mussio and an attorney prior to her execution of the consent to adoption. Although Jackson claims that she was unduly influenced by these professionals, the record fails to support her contention. Jackson initiated the original contact with the adoption agency and followed up that contact in two meetings with Franke, its director. Jackson caused the hospital social worker to contact Franke on her behalf at the time her child was born. Jackson was counseled by Mussio prior to her own discharge from the hospital. Furthermore, Jackson was counseled by her attorney prior to the probate court's placement hearing. There is no evidence in the record to suggest that any of these individuals acted in a way that compromised the exercise of Jackson's free will.
Jackson claims that her attorney's failure to disclose to her the source of his compensation for the case affected her ability to make an informed decision. Jackson's attorney testified that, although it was his standard practice to inform birth mothers that his fee usually would be paid by the adoptive couple, he could not recall with certainty whether he had informed Jackson as to the source of his compensation. Even if it is assumed that there was a conflict of interest, Jackson's consent could not be invalidated unless she was able to demonstrate that there was a causal connection between the conflict of interest and the consent sufficient to render it invalid. See In re Adoption of InfantGirl Banda (1988), 53 Ohio App.3d 104, 559 N.E.2d 1373. There is no indication in this case that the attorney's failure to disclose the source of his compensation had any effect whatsoever on the validity of Jackson's consent in light of Jackson's own actions in initiating the adoption process.
The record indicates that Jackson's consent was given knowingly and voluntarily. Jackson's contention that her ability to knowingly consent to the adoption was overborne by her state of "dysfunctional denial" is unsupported by the record. Jackson already was caring for her first child, a three-year-old daughter, and thus was aware of the responsibilities of parenthood. Jackson not only contacted and met with Franke twice prior to the birth of her son, but she instructed the hospital social worker to contact Franke regarding the adoption. Jackson consented to the adoptive parents' visitation of her child in the hospital and to the subsequent discharge of her child. Jackson left the hospital before her child's discharge, without giving him a name on his birth certificate. Furthermore, Jackson attended the placement hearing, at which the probate court magistrate extensively questioned Jackson about her decision and determined that Jackson had voluntarily and knowingly given her consent to the adoption.
Jackson contends that her consent was invalid because it was executed within seventy-two hours of the time that she executed Ohio Department of Human Services Form 1693. R.C.3107.082 (A) provides:
Not less than seventy-two hours prior to the date a parent executes a consent to the adoption of the parent's child under section 3107.081 of the Revised Code, an assessor shall meet in person with the parent and do * * * the following unless the child is to be adopted by a stepparent or the parent resides in another state:
(A) Provide the parent with a copy of the written materials about adoption prepared by the department of human services * * *, discuss with the parent the adoption process and ramifications of a parent consenting to a child's adoption, and provide the parent the opportunity to review the materials and to ask questions about the materials, discussion, and related matters. * * *
In this case, the probate court found that while the seventy-two-hour window required by R.C. 3107.082(A) had been honored, the evidence did not demonstrate that Mussio had given Jackson the written materials required by the statute. This failure by Mussio, however, was not fatal. While adoption statutes must be strictly construed, Lemley v. Kaiser (1983),6 Ohio St.3d 258, 452 N.E.2d 1304, strict construction does not require that statutes be interpreted in a manner that would mandate an unjust or unreasonable result. See Zschach, supra.
The probate court found that Jackson had failed to demonstrate that her consent was the product of duress or undue influence, instead concluding that the consent to the adoption was provided knowingly and voluntarily. The record supports the trial court's determination. Having found that Jackson had given a valid consent to the adoption, the probate court properly continued its analysis by turning its attention to the application of R.C. 3107.084. SeeMcGinty, supra; In re Adoption of Holcomb, supra.
R.C. 3107.084(B) governs the attempted withdrawal of a valid consent. The statute applies to a parent who changes his or her mind after having consented to adoption. See Zschach, supra.
Courts have consistently held that the mere fact that the natural mother has had a change of heart about the adoption is insufficient to revoke consent, and that giving effect to a mere change of heart would be contrary to public policy. See, e.g., Inre Adoption of Infant Boy (1989), 60 Ohio App.3d 80,573 N.E.2d 753; In Re Adoption of Infant Girl Banda (1980),53 Ohio App.3d 104, 559 N.E.2d 1373. A parent may only withdraw his or her consent to an adoption if the parent demonstrates that withdrawal is warranted and is consistent with the best interests of the child. R.C. 3107.084(B); see Zschach, supra. The legislature, however, has provided only a narrow time frame for the filing of a motion to withdraw consent, requiring that the motion be filed before the entry of an interlocutory order or final decree of adoption.
In this case, no interlocutory order or final adoption decree had been entered at the time Jackson filed her notice of withdrawal of consent. Therefore, pursuant to the statute, the probate court was obligated to hold a hearing and to make a determination whether the withdrawal of consent would be in the child's best interest. In this case, the probate court held such a hearing and determined that the child's best interest would not be served by granting Jackson's motion to withdraw consent to the adoption.
When the probate court holds a hearing to determine whether the natural mother's withdrawal of consent would be in the best interest of the child, it must consider the factors listed in R.C.3107.161. R.C. 3107.161 stresses the length of time of the child's current placement and the importance of providing permanency, stability, and continuity of relationships with the child. The best interest of the child is determined on a case-by-case basis, and the probate court's determination in that regard will not be disturbed on appeal absent an abuse of discretion. See In re Ridenour (1991), 61 Ohio St.3d 319,574 N.E.2d 1055; In re Adoption of Charles B. (1990), 50 Ohio St.3d 88,552 N.E.2d 884.
In this case, the probate court found that the best interest of Jackson's child required that Jackson's motion to withdraw her consent be denied. After allowing the presentation of further evidence on this point in its consideration of Jackson's Civ.R 60(B) motion, the probate court made a similar finding. The record supports the trial court's determination that the child was over a year old at the time of the court's December 8, 1998, decision, and had never lived with Jackson. The child had been with the Mosers since his discharge from the hospital two days after his birth. The Mosers demonstrated to the trial court the stability of their marriage and of Mr. Moser's employment. The Mosers had previously adopted, and were raising, a biracial child. Because the record supports the trial court's determination that the child's best interest would be served by denying Jackson's motion to withdraw her consent, we cannot say the trial court abused its discretion by denying the motion for relief from judgment.
Jackson claims that the probate court was required to dismiss the petition for adoption because Jackson's child was illegally placed with the Mosers in contravention of R.C. 5103.16(D). We disagree. The statute prohibits the placement or acceptance of a child under an agreement that transfers the legal rights of parents to another without the written consent of the department of human services or a commitment by a court. See Zschach,supra. In this case, Jackson's legal rights as a parent were not transferred to the Mosers in any way, and remained unaffected, prior to the probate court's approval of the proposed placement.
Furthermore, Jackson was an active participant in allowing the Mosers to provide care to the child prior to the placement hearing. Jackson authorized visitation by the Mosers with the child and further authorized the child's discharge from the hospital to Franke with the understanding that the child would then be placed with the Mosers. Two days after her son's discharge from the hospital, Jackson executed and filed with the probate court an application for the court's approval of placement with the Mosers, alleging "that said placement would be in the best interest of the child." After a hearing, Jackson's request was approved.
In order to prevail on a Civ.R. 60(B) motion for relief from judgment, the movant must demonstrate the following: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief on one of the grounds stated in Civ.R. 60(B) (1) through (5); and (3) the motion is made within a reasonable time, and where relief is sought under Civ.R. 60(B) (1), (2), or (3), not more than one year after the judgment, order, or proceeding was entered or taken.GTE Automatic Electric, Inc. v. ARC Industries (1976), 47 Ohio St.2d 146, 351 N.E.2d 113. A motion for relief from judgment under Civ.R. 60(B) is addressed to the sound discretion of the trial court, and the court's ruling will not be disturbed on appeal absent a showing of abuse of discretion. See Griffey v.Rajan (1987), 33 Ohio St.3d 75, 514 N.E.2d 1122. An abuse of discretion connotes an attitude by the trial court that is unreasonable, arbitrary, or unconscionable. See Russo v. Deters
(1997), 80 Ohio St.3d 152, 684 N.E.2d 1237. In light of Jackson's failure to demonstrate that she has a meritorious claim or that one of the grounds of Civ.R. 60(B) is applicable, we cannot say that the trial court abused its discretion in denying Jackson's motion. The assignment of error is overruled, and the judgment of the trial court is affirmed. In consideration that appeal number C-980077 is an appeal of the probate court's order denying Jackson's motions to withdraw her consent and to set aside the placement of her child, and there being no assignment of error under that case number, that appeal is hereby dismissed.
Judgment affirmed in C-990008; appeal dismissed in C-980077.
 Doan, P.J., and Sundermann, J., concur.
Please Note:
The court has placed of record its own entry in this case on the date of the release of this Decision.
[1] The parties have filed a joint motion to seal the files and to omit from our decision identifying information about the participants in this case. We hereby overrule that motion.