DECISION AND JUDGMENT
{¶ 1} This is an appeal by appellants of a judgment of the Lucas County Court of Common Pleas, Probate Division, relating to the adoption of their great-grandchildren, by appellees. For the reasons that follow, we affirm.
 {¶ 2} The facts giving rise to this appeal are as follows. On December 12, 2006, appellants, Caroll and Tom A., filed petitions in the Lucas County Probate Court to adopt *Page 2 
their great-grandchildren, Jeffrey L., age three, and Jesse L., age one. At the time, the children were in the permanent custody of the Lucas County Children's Services Board ("LCCSB"). LCCSB consented to appellants' petition request. On September 21, 2006, appellees, foster parents to the children, also filed petitions seeking to adopt the children. On October 3, 2006, LCCSB filed objections to appellees' petitions. Following a contested consent hearing, the court found that, pursuant to R.C. 3107.07(H), LCCSB had unreasonably withheld its consent to appellees' petitions and that it was in the best interest of the children to grant appellees' adoption petitions. Appellants now appeal setting forth the following assignment of error:
 {¶ 3} "The trial court abused its discretion in finding that the Lucas County Children Service Board unreasonably withheld its consent from [appellees] petitions and further finding that granting [appellees'] petition was in the best interest of the minor children."
 {¶ 4} Pursuant to R.C. 3107.14(C), the probate court may issue a final decree of adoption if, at the conclusion of a hearing on an adoption petition, the court finds that the required consents have been obtained or excused and that the adoption is in the best interest of the person sought to be adopted. "Thus, an adoption proceeding is a two-step process involving a `consent' phase and a `best-interest' phase." In reAdoption of Jordan (1991), 72 Ohio App.3d 638, 645. Accord In re LindseyB., (July 13, 2001), 6th Dist. No. L-01-1197. *Page 3 
 {¶ 5} Appellants first contend that the court erred in finding that LCCSB had unreasonably withheld their consent to appellees' adoption petitions. Pertinent to this case, R.C. 3107.07(H) provides:
 {¶ 6} "Consent to adoption is not required of any of the following:
 {¶ 7} "* * *
 {¶ 8} "Any legal guardian or lawful custodian of the person to be adopted, other than a parent, who has failed to respond in writing to a request for consent, for a period of thirty days, or who, after examination of the written reasons for withholding consent, is found by the court to be withholding consent unreasonably; * * *"
 {¶ 9} It must be shown by clear and convincing evidence that the lawful custodian unreasonably withheld consent to adoption. The Supreme Court of Ohio has defined "clear and convincing evidence" as:
 {¶ 10} "[T]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." In re Estate of Haynes (1986), 25 Ohio St.3d 101, 104.
 {¶ 11} Our review of the record shows that LCCSB had only one reason for withholding consent. That is, LCCSB objected to appellees' petitions because appellees are not blood relatives of the children. In taking this narrow approach, it is clear that LCCSB failed to consider numerous other factors such as the relationship between *Page 4 
appellees and the children, the nurturing home environment appellees had provided for the children, the relationships between the children and appellees' biological children and the developmental progress the children had achieved while under the primary care of appellees. LCCSB was aware of these factors before they withheld their consent. While we do not find fault in the agency's general preference for blood relatives in adoption matters, we do find it to be unreasonable for the agency to only consider lineage to the exclusion of everything else.
 {¶ 12} Next, appellants contend that the court erred in finding that granting appellees' adoption petitions would be in the best interest of the children.
 {¶ 13} The standard for determining whether the probate court should allow the adoption is whether (1) the petitioner is suitably qualified to care for and rear the child, and (2) the adoption is in the best interest of the child. In re Adoption of Charles B. (1990),50 Ohio St.3d 88, 93, and In re Adoption of Ridenour (1991), 61 Ohio St.3d 319,320. Therefore, each case must be determined on its own facts.Charles B., supra, at paragraph three of the syllabus. The probate court's determination is reviewed on appeal under an abuse of discretion standard. Id. at 94. An abuse of discretion "implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable."Ridenour, supra. The probate court alone weighs the testimony and determines the credibility of the witnesses. In re Lindsey B., supra, and In re Adoption of Lauren Marie Tucker, 11th Dist. No. 2002-T-0154, 2003-Ohio-1212, ¶ 11, both citing Bechtol v. Bechtol (1990),49 Ohio St.3d 21, 23. *Page 5 
 {¶ 14} In making its determination of the best interest of the child to be adopted, R.C. 3107.161(B) provides that the probate court "shall consider all relevant factors including, but not limited to, all of the following:
 {¶ 15} "(1) The least detrimental available alternative for safeguarding the child's growth and development;
 {¶ 16} "(2) The age and health of the child at the time the best interest determination is made and, if applicable, at the time the child was removed from the home;
 {¶ 17} "* * *
 {¶ 18} "(5) Whether the child will be able to enter into a more stable and permanent family relationship, taking into account the conditions of the child's current placement, the likelihood of future placements, and the results of prior placements;
 {¶ 19} "* * *
 {¶ 20} "(7) The importance of providing permanency, stability, and continuity of relationships for the child;
 {¶ 21} "(8) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; * * *
 {¶ 22} "(9) The child's adjustment to the child's current home, school, and community;
 {¶ 23} "(10) The mental and physical health of all persons involved in the situation[.]" *Page 6 
 {¶ 24} The record in this case, including the testimony from the contested hearing, reveals the following. The children's birth parents are both chronic substance abusers unable to care for their children. Both children were born with cocaine in their systems. In 2004, LCCSB was granted temporary custody of Jeffrey and he was placed with his maternal great-grandmother, appellant, Caroll A., with the understanding that Jeffrey was to have no contact with his birth mother. LCCSB revoked temporary custody when they learned that Caroll A. had allowed the birth parents to live with her and Jeffrey and that Caroll A. had allowed Jeffrey's birth parents to take him on a trip to Florida. At the age of 2, Jeffrey was placed in the temporary custody of appellees. In 2005, Jesse was born. The record shows that LCCSB considered placing Jesse with Caroll A. but rejected her in favor of appellees. Both children suffer from neurological problems as a result of their cocaine exposure. They require consistent therapy to improve their delayed speech and motor skills.
 {¶ 25} Appellants have visitation rights and have bonded with their greatgrandchildren. They have been married approximately 40 years but maintain separate residences. The record shows that initially, Tom A. was not interested in adopting the children because of his age. Caroll A. has always remained part of the children's lives. After losing temporary custody of Jeffery, Caroll A. went to great lengths to educate herself on the nature of drug addiction so that she is better prepared to help her granddaughter overcome her addiction. If allowed to adopt, appellants had planned to allow the birth parents contact with the children. *Page 7 
 {¶ 26} Appellees have been married approximately ten years and have six biological children. Appellee, Kara V. home schools her children. Two of the older children have tested above their grade level. As a family, appellees are active in church and neighbor activities. The record shows that appellees have regularly been helping Jeffrey and Jesse perform physical exercises to help their motor skill development as well transporting them to weekly speech therapy classes. The children have bonded with appellees' biological children and consider them siblings. They also consider appellees to be their parents. Appellees expressed a desire to help the children maintain a relationship with their great-grandparents.
 {¶ 27} The Guardian Ad Litem ("GAL"), in recommending that appellees be allowed to adopt, reported that appellees' home was clean and well organized. In addition, she found that the structure and rules found in appellees' home to be beneficial to the children. The GAL expressed concern that appellants' home lacked the same structure and discipline.
 {¶ 28} In granting appellees' petitions, the trial court noted that the agency declined to initially place Jesse with Caroll A. when he was born. The court further related:
 {¶ 29} "It could be stated that the major issue in this case is whether it is in the children's best interest to remove them from a home where they have bonded and place them in a new home where one of their great-grandparents resides. * * * It is clear that the prediction of what long-term impact an action may have on a small infant later in life *Page 8 
is not an exact science. One sure factor, however, is that a child will benefit from a loving, caring family. These children are currently in such a situation."
 {¶ 30} Based upon the record before us, we cannot find that the probate court abused its discretion in determining that appellees' adoption of the children was in the children's best interest. Appellants' assignment of error is found not well-taken.
 {¶ 31} On consideration whereof, this court finds that substantial justice was done the party complaining and the judgment of the Lucas County Court of Common Pleas, Probate Division, is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
 Arlene Singer, J., William J. Skow, J., Thomas J. Osowik, J., CONCUR.