[Cite as *In re I.W.*, 2016-Ohio-8047.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 104098

# IN RE: I.W., ET AL.
# Minor Children

[Appeal by B.W., Mother]

## JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD14912488 and AD14912489

**BEFORE:** Blackmon, J., McCormack, P.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** December 8, 2016

**ATTORNEYS FOR APPELLANT**

Christopher R. Lenahan
Christopher R. Lenahan Inc., Co.
2035 Crocker Road
Suite 104
Westlake, Ohio 44145

Sarah E. Gatti
Cuyahoga County Assistant Public Defender
9300 Quincy Avenue, 5th Floor
Cleveland, Ohio 44106

R. Brian Moriarty
55 Public Square
21st Floor
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE, C.C.D.C.F.S.**

Timothy J. McGinty
Cuyahoga County Prosecutor

Colleen R. Cassidy Ulrich
County Dept. of Human Services
Assistant Prosecuting Attorney
3955 Euclid Avenue
Cleveland, Ohio 44115

**Also Listed:**

John Doe
c/o Cuyahoga County Juvenile Division Clerk of Courts
9300 Quincy Avenue, 2d Floor
Cleveland, Ohio 44106

**Guardian ad litem**

Candace L. Brown
P.O. Box 286
Medina, Ohio 44258

**For J.L., III (Father of A.W.)**

Michael S. Weiss
602 Rockefeller Building
614 West Superior Avenue
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, J.:

**{¶1}** Appellant B.W. ("Mother") appeals the juvenile court's decision terminating her parental rights and awarding permanent custody of her children I.W. (d.o.b. May 13, 2011), and A.W. (d.o.b. Feb. 14, 2014) to the Cuyahoga County Division of Children and Family Services ("CCDCFS"). Mother assigns the following error for our review:

> I. The juvenile court's order granting permanent custody to the CCDCFS
>
> was not based upon sufficient clear and convincing evidence.

**{¶2}** Having reviewed the record and pertinent law, we affirm the juvenile court's decision. The apposite facts follow.

### Facts

**{¶3}** A.W. suffers from laryngeal malaysia, which makes her prone to aspirate putting her at risk for developing pneumonia. A.W. was hospitalized in April 2014 for pneumonia and due to Mother not taking the child to follow-up appointments, A.W. was rehospitalized in May 2014. CCDCFS was contacted due to concerns of medical neglect of A.W. and also concerns that Mother was depressed and suffering from suicidal ideations. As a result, CCDCFS obtained a protective supervision order from the juvenile court.

**{¶4}** On September 19, 2014, police officers witnessed Mother hitting I.W.'s head against the metal seats at a bus stop. She was arrested and charged with two counts of child endangerment and one count of domestic violence. Pending trial, the

common pleas court ordered that Mother have no contact with I.W. CCDCFS obtained emergency custody of the children.

{¶5} On September 29, 2014, CCDCFS filed for temporary custody of the children based on the medical neglect of A.W. and abuse of I.W. A.W. was underweight and Mother had missed ten medical appoints for the child from May through September 2014. The temporary custody hearing was conducted in December 2014; the trial court adjudicated I.W. as abused and A.W. as neglected. In January 2015, the dispositional hearing was conducted and CCDCFS was awarded temporary custody. A case plan was filed with the court that required Mother obtain mental health counseling, complete parenting and anger management classes, and obtain education regarding A.W.'s basic medical needs.[1]

{¶6} On March 19, 2015, the Cuyahoga County Common Pleas Court filed a journal entry showing that Mother entered a guilty plea to one count of child endangerment and domestic violence and was sentenced to one year in prison. A no-contact order with I.W. was included as part of the sentence.

{¶7} On August 4, 2015, CCDCFS filed a motion for permanent custody, and in December 2015, a permanent custody hearing was conducted. At the hearing, Catherine Borden, a social worker with CCDCFS, testified that she was assigned the children's case in August 2014. According to Borden, Mother completed the parenting classes, but due

---

[1]A similar plan was developed for A.W.'s father. However, because he failed to follow through with the plan and has not appealed, we will not discuss the agency's involvement with him. Paternity was not established for I.W.

to her incarceration she had only completed two anger management classes and only attended two counseling sessions. Mother was still in jail at the time of the hearing; therefore, her ability to obtain stable housing was unknown. Borden was also unsure whether the no- contact order with I.W. would apply during Mother's postrelease control.

{¶8} Borden testified that A.W. and I.W. have a close relationship and that I.W. was very protective of A.W. A.W. had gained weight and her laryngeal malaysia had improved while in foster care. I.W. attended preschool, however he had been diagnosed with posttraumatic stress disorder ("PTSD) due to Mother's abuse. He is receiving therapy for his anger and his aggressive behavior.

{¶9} While the hearing was pending, Mother filed a motion requesting that her Aunt Laquida Watkins be granted legal custody of the children. Borden investigated Watkins and her living conditions and concluded Watkins could not be approved for legal custody. Borden stated that Watkins had insufficient income and had a "history" with the agency regarding abuse against Mother when Mother was a child. Watkins had no interaction with the children while they were in CCDCFS's custody.

{¶10} Laquida Watkins testified that she is Mother's aunt and the great aunt of the children. She currently has four children of her own (twins that are eight-years old, a seven-year old, and a four-year old) and lives in a three- bedroom apartment. She makes about $8,000 a year babysitting and styling hair. She also receives food stamps. At the time of the hearing, she was applying for SSI because she had been diagnosed with "fluid on the brain." She claimed this physical disability would not affect her ability to care for

the children. She was not aware of I.W.'s anger issues, but claimed that although she did not drive, family would help to get him to his therapy sessions. Her daughter currently does not have a bed and sleeps with her, but she believed family would help her obtain beds for I.W. and A.W.

{¶11} The guardian ad litem ("GAL") submitted a report. She stated that A.W. and I.W. have been with the same foster family since CCDCFS obtained custody. A.W. is thriving with the foster family and has gained weight has had few medical occurrences. The GAL spoke to I.W.'s counselor regarding his behavioral issues and was told that he is fixated on the bus stop incident where his mother beat him and is overly focused on his sister's safety. He also becomes angry easily and transfers his anger for his biological mother to his foster mother. The GAL stated that the children have bonded with the foster parents and that the foster parents would like to adopt the children.

{¶12} The GAL did interview Watkins and surveyed her home. She had the same concerns that the social worker Borden had regarding Watkin's income and "fluid on the brain" diagnosis. She was also concerned that Watkins claimed to not know anything regarding Mother's criminal charges for abusing I.W. The GAL recommended that it was in the best interest of the children that CCDCFS be awarded permanent custody.

{¶13} After the hearing, the trial court granted CCDCFS's motion for permanent custody for I.W., finding in relevant part that CCDCFS had shown by clear and convincing evidence that the child could not be placed with Mother within a reasonable time, that Mother had failed to remedy the problems that had caused the child to be

removed, and that Mother was incarcerated for abusing one of the children and that the "seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety."

{¶14} The court also granted CCDCFS's motion for permanent custody as to A.W., finding that CCDCFS had shown by clear and convincing evidence that the child could not be placed with Mother within a reasonable time, that Mother had failed to remedy the problems that caused the child to be removed, and that Mother was incarcerated for an offense committed against A.W.'s sibling.

## Permanent Custody

{¶15} Mother argues that the trial court erred by granting custody of her children to CCDCFS. She specifically argues that CCDCFS failed to provide clear and convincing evidence that the children could not be reunited with her within a reasonable time or that custody to CCDCFS was in the children's best interest.

{¶16} It is well established that the right to parent one's children is a fundamental right. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 28. Nevertheless, a government agency has broad authority to intervene when necessary for the child's welfare or in the interests of public safety. *Id.* at ¶ 28-29, citing R.C. 2151.01(A). A juvenile court's termination of parental rights and award of permanent custody to an agency will not be reversed unless the judgment is unsupported by clear and convincing evidence. *In re Dylan C.*, 121 Ohio App.3d 115, 121, 699 N.E.2d 107 (6th Dist.1997).

**{¶17}** The termination of parental rights is governed by R.C. 2151.414. R.C. 2151.414 sets forth a two-part test courts must apply when deciding whether to award permanent custody to a public services agency. The statute authorizes the juvenile court to grant permanent custody of a child to the public agency if, after a hearing, the court determines, by clear and convincing evidence, that any of the four following factors apply:

> (a) the child is not abandoned or orphaned, but the child cannot be placed with either parent within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned, and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period.

R.C. 2151.414(B)(1)(a)-(d).

**{¶18}** Only one of the four factors must be present for the first prong of the permanent custody analysis to be satisfied. When any of these four factors exists, the trial court proceeds to analyze whether, by clear and convincing evidence, it is in the best interests of the child to grant permanent custody to the agency under R.C. 2151.414(D).

**{¶19}** In this case, the trial court found R.C. 2151.414(B)(1)(a) factor to be present: the children cannot be placed with either parent within a reasonable time or should not be placed with the parents. In order to find the presence of this factor, R.C. 2151.414(E) requires the trial court to consider 16 enumerated factors. Here, the trial court found four enumerated factors to be present for I.W.: R.C. 2151.414(E)(1), (4),

(5), and (15) and three enumerated factors present for A.W.: R.C. 2151.414(E)(1), (4), and (5).

{¶20} The trial court found that notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that caused the children to be removed from the parents, the parents had failed to substantially remedy the conditions that caused the children to be placed outside the home. R.C. 2151.414(E)(1). Our review of the record shows this finding was supported by the evidence because Mother has not completed anger management classes or mental health counseling.

{¶21} The trial court additionally found that the parent is incarcerated for an offense committed against the child or a sibling of the child. R.C. 2151.414 (E)(5). It is undisputed that Mother was incarcerated at the time for abusing I.W.

{¶22} As to I.W., the court also found that the parent has committed abuse against the child or caused or allowed the child to suffer neglect and the court determined that the seriousness, nature, or likelihood of recurrence of the abuse or neglect made the child's placement with the child's parent a threat to the child's safety. R.C. 2151.414(E)(15). Again, given the fact that Mother was convicted for abusing I.W., there was evidence to support this finding of abuse.

{¶23} The trial court also found that the parent has demonstrated a lack of commitment toward the children by failing to regularly support, visit, or communicate with them when able to do so, or by other actions showing an unwillingness to provide an

adequate permanent home for the child. R.C. 2151.414(E)(4). It is true that Mother was incarcerated and had a no-contact order against one of the children. However, prior to her incarceration, the social worker testified that Mother's visits with A.W. were not "productive" because she gave no attention to the child during the visitation. Instead, she focused her attention on her cell phone or A.W.'s father.

{¶24} Regarding the second step, the best interest of the child, R.C. 2151.414(D) mandates that the juvenile court consider all relevant factors, including, but not limited to, the following: (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *; (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; (5) Whether any of the factors in division (E)(7) to (11) of [R.C. 2151.414] apply in relation to the parents and child.

{¶25} The trial court stated it considered all of the above factors in addition to the GAL report in concluding that awarding permanent custody was in the best interest of the children. Mother argues that permanent custody to CCDCFS was not in the children's

best interest because Borden testified that the children had a strong family bond with Mother and that I.W.'s behavioral problems were because he missed his mother. Our review of the evidence does not show that such a bond existed. Borden testified that although Mother visited the children prior to being imprisoned, her visits were not productive. Mother spent most of the time on her cellphone or talking to A.W.'s father. There was very little interaction with the children. Borden at the temporary custody hearing initially attributed I.W.'s behavioral problems to his missing his mother. However, at the permanent custody hearing, it was clarified that his behavior was due to "PTSD" regarding the beating he suffered at the bus stop at the hands of Mother and the anger he feels towards his mother.

{¶26} Mother also argues that her Aunt Laquida Watkins could take legal custody of the children. After investigating the aunt, CCDCFS could not approve her as a legal custodian. The trial court agreed that Watkins would not be a suitable legal custodian for the children. The trial court noted that Watkins: (1) had prior history with CCDCFS involving Mother when Mother was a child; (2) had a lack of income; (3) did not have a bed for her own daughter; (4) had no knowledge of I.W.'s behavioral issues; (5) was in the process of applying for SSI for having fluid on the brain; and (6) she claimed to know nothing about Mother's criminal convictions for abusing I.W.

{¶27} "A child's best interest are served by the child being placed in a permanent situation that fosters growth, stability, and security." *In re M.S.,* 8th Dist. Cuyahoga Nos. 101693 and 101694, 2015-Ohio-1028, ¶ 11, citing *In re Adoption of Ridenour*, 61 Ohio

St.3d 319, 324, 574 N.E.2d 1055 (1991). The willingness of a relative to care for a child does not alter what a court considers in determining whether to grant permanent custody. *Id.*, citing *In re A.D.* at ¶ 12. The evidence showed that the children are thriving in foster care where they are receiving the medical and mental health assistance they need. They have bonded with their foster parents. After reviewing the record, we conclude that the trial court's award of permanent custody to CCDCFS was supported by clear and convincing evidence. Accordingly, Mother's assigned error is overruled.

{¶28} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Common Pleas Court Juvenile Division to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, JUDGE

TIM McCORMACK, P.J., and
MARY J. BOYLE, J., CONCUR