[Cite as *In re G.D.C.*, 2017-Ohio-8302.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

In the Matter of the Adoption of: :

G.D.C. : Case No. 17CA13

: <u>DECISION AND</u>
<u>JUDGMENT ENTRY</u>

: RELEASED 10/18/2017

William B. Summers, Parkersburg, West Virginia, for Appellant.

William L. Burton, Burton Law Office, LLC, Marietta, Ohio, for Appellee.

Hoover, J.

{¶1}   Respondent-appellant, Z.D.T., ("father") is the biological father of G.D.C. ("child"). The petitioner-appellee, G.C., ("stepfather") filed a petition to adopt the child.  The father appeals the judgment of the Washington County Common Pleas Probate Court that granted stepfather's petition to adopt the child.

{¶2}   On appeal, the father argues that the trial court abused its discretion by concluding that the best interests of the child were served by granting the adoption. Upon review, we are unable to conclude that the trial court abused its discretion by granting the adoption petition. Based upon the evidence and testimony presented at the hearing, the trial court could have rationally determined that allowing the stepfather to adopt the child would promote and secure her best interest.

{¶3}   Accordingly, we affirm the trial court's judgment.

**I. Facts and Procedural History**

Washington App. No. 17CA13

{¶4} The child was born on December 15, 2013, to H.L.C. ("mother") and the father. The mother and the father never married. The father stayed with the mother periodically from approximately the child's date of birth through January 2015. After January or February 2015, the father had no contact with the child. The mother then began a relationship with the stepfather in April 2015. The stepfather began staying with the mother in June 2015; he moved in with the mother and child in September 2015. In January 2016, they married.

{¶5} On July 27, 2016, the stepfather filed a petition to adopt the child who was then approximately 2 ½ years old. The stepfather alleged that the father's consent was not required, because, for at least one year immediately preceding the filing of the adoption petition, the father (1) failed without justifiable cause to provide more than de minimis contact with the child and (2) failed without justifiable cause to provide for the maintenance and support of the child as required by law or judicial decree.

{¶6} On August 12, 2016, the father filed an "Objection to the Adoption Petition". On October 28, 2016, the father filed an "Amended Objection to Adoption". In both objections, the father claimed that he tried numerous times to contact the child and to provide support, but the mother ignored his attempts. The father also asserted that he repeatedly tried to establish visitation and child support; however, the matter was "transferred back and forth between Common Pleas Court and the Juvenile Court for jurisdiction issues."

{¶7} After a hearing, on November 21, 2016, the trial court determined that the father's consent to the petition for adoption was not required. The trial court found that the father failed to provide more than de minimis contact with the child during the one year period immediately preceding the filing of the adoption petition. The father did not file an appeal to the trial court's order.

Washington App. No. 17CA13

{¶8}    On March 1, 2017, the trial court held a hearing to determine whether the adoption is in the best interest of the child. At the hearing, the mother explained that the stepfather was involved in every aspect of the child's life. The child called the stepfather "Daddy". The stepfather has been the person that provided the child financial support; he has taken her to the doctor; and he has taken part in her education.

{¶9}    As for the child's relationship with the father and his family, the mother testified that the child's paternal grandparents seldom visited, every four or five months. The grandparents sent some cards and bought the child a few outfits. The mother explained that although the father had some supervised visits with the child subsequent to the filing of the petition for adoption, the child is not aware of her relationship with her biological father.

{¶10}   The father testified that during the year or so following the child's birth, he provided care and financial support. He admitted that he did not have any contact with the child for more than one year immediately preceding the filing of the adoption petition. However, he stated that he tried to contact the mother; but she did not respond to his messages.

{¶11}   The father explained that in May 2015, the mother asked him to either pay child support or to relinquish his parental rights. He stated that at the time, he did not have much money, did not "really want to pay child support," and did not want to relinquish his parental rights. The father related that the mother later dropped her request.

{¶12}   The father testified that he would like to retain his parental rights and be able to visit the child. He indicated that he had no desire to disrupt the child's custodial situation; but instead, he only wanted the ability to visit with and maintain a relationship with her. He further stated that he would be willing to pay child support. When asked why he had not earlier sought

Washington App. No. 17CA13

to establish visitation with the child, the father stated that he "had no clue" how to go about seeing his child when the mother did not respond to messages.

{¶13} On March 6, 2017, the trial court determined that granting the stepfather's adoption petition would be in the child's best interest. In reaching its decision, the trial court examined all of the best interest factors enumerated in R.C. 3107.161(B). The court first considered the least detrimental available alternative for safeguarding the child's growth and development and found that allowing the stepfather to adopt the child would have the least long-term negative impact on the child. The court noted that the stepfather has been providing for and raising the child for the last one and one-half years; the child is closely bonded to the stepfather; the child believes the stepfather is her father; and the child refers to him as "daddy." The court further found that neither the stepfather nor the mother prevented the father from visiting the child or talking to the child, but instead, the father chose not to visit, call, or write the child after he and the child's mother ended their relationship. The court additionally observed that the father did not voluntarily choose to provide financial support for the child following his and the mother's separation.

{¶14} The court evaluated the remaining best interest factors and determined that they weighed in favor of granting the stepfather's adoption petition. The court found that the child is happy and healthy and that she is well adjusted to the home and community she shares with her mother and stepfather. The court observed that the father did not have any contact with the child between January/February 2015 and July 27, 2016, the date the petition to adopt was filed. The court determined that living with the mother and the stepfather is the best placement for the child. The court considered the likelihood of a safe reunification with the father within a reasonable period of time and found that the child does not know that the father is her actual

biological father; and she does not have a relationship with him. The court additionally determined that the father "failed to fulfill the role of [the child]'s father." The court weighed the importance of providing permanency, stability, and continuity of relationships for the child and determined that the child needs permanency.

{¶15} The court additionally found that the father failed to establish that the child's current placement is not the least detrimental available alternative and is not in the child's best interest. The court thus granted the stepfather's petition to adopt the child.

## II. Assignment of Error

{¶16} The father raises one assignment of error:

THE TRIAL COURT ABUSED ITS DISCRETION BY CONCLUDING THAT
THE BEST INTERESTS OF THE CHILD WERE SERVED BY GRANTING
THE ADOPTION.

## III. Law and Analysis

{¶17} In his sole assignment of error, the father argues that the trial court abused its discretion by concluding that adoption is in the child's best interest. Specifically, the father asserts that the trial court "ignored several crucial facts" and that if the court had considered these facts, it would have determined that adoption is not the least detrimental alternative. The father contends that preserving his parent-child relationship, but allowing the child to remain living with the mother and stepfather, is the least detrimental alternative to safeguard the child's growth and development. He alleges that the child's young age allows for her to be reintroduced to the father and his family. The father additionally claims that the mother indicated that she would inform the child at a later date that she was adopted and might reintroduce the child to her biological father. He argues that allowing the adoption to proceed, but then later informing the child that she is adopted, would serve only to confuse the child. The father further asserts that

Washington App. No. 17CA13

denying the adoption petition would not disrupt the child's current custodial arrangement, but instead, would simply allow him to exercise visitation rights.

## A. Standard of Review

{¶18} "[A]doption matters must be decided on a case-by-case basis through the able exercise of discretion by the trial court giving due consideration to all known factors in determining what is in the best interest of the person to be adopted." *In re Adoption of Charles B.*, 50 Ohio St.3d 88, 90, 552 N.E.2d 884 (1990). The trial court thus enjoys considerable discretion in determining whether an adoption is in the child's best interest. *Id.* at 94. Accordingly, absent an abuse of discretion, a reviewing court may not reverse a trial court's decision concerning an adoption petition. An abuse of discretion implies more than an error of law or of judgment. Rather, an abuse of discretion suggests that the trial court acted in an unreasonable, arbitrary, or unconscionable manner. *In re Jane Doe 1*, 57 Ohio St.3d 135, 566 N.E.2d 1181 (1991); *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). Furthermore, an appellate court should not substitute its judgment for that of the trial court when competent, credible evidence supports the trial court's decision. *In re Adoption of Deems*, 91 Ohio App.3d 552, 558, 632 N.E.2d 1347 (3d Dist.1993); *Trickey v. Trickey* , 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952). As the court stated in *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988):

> The discretion which a trial court enjoys in custody matters should be accorded
> the utmost respect, given the nature of the proceeding and the impact the court's
> determination will have on the lives of the parties concerned. The knowledge a
> trial court gains through observing the witnesses and the parties in a custody
> proceeding cannot be conveyed to a reviewing court by a printed record. * * * In

this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct. * * *

(Citations omitted). *Accord Reynolds v. Goll*, 75 Ohio St.3d 121, 124, 661 N.E.2d 1008 (1996).

## B. Adoption Standard

{¶19} R.C. 3107.14(C) allows a trial court to issue an adoption decree if the court finds that all required consents have been obtained or excused[1] and that adoption is in the child's best interest. *See Charles B.,* 50 Ohio St.3d at 90 (stating that "[t]he polestar by which courts in Ohio * * * have been guided is the best interest of the child to be adopted"). R.C. 3107.161(B) sets forth the factors a trial court must consider when determining whether an adoption is in a child's best interest. The statute provides:

(B) When a court makes a determination in a contested adoption concerning the best interest of a child, the court shall consider all relevant factors including, but not limited to, all of the following:

(1) The least detrimental available alternative for safeguarding the child's growth and development;

(2) The age and health of the child at the time the best interest determination is made and, if applicable, at the time the child was removed from the home;

(3) The wishes of the child in any case in which the child's age and maturity makes this feasible;

(4) The duration of the separation of the child from a parent;

(5) Whether the child will be able to enter into a more stable and permanent family relationship, taking into account the conditions of the child's current

---

[1] The father did not appeal the trial court's determination that his consent is not required.

Washington App. No. 17CA13

placement, the likelihood of future placements, and the results of prior placements;

(6) The likelihood of safe reunification with a parent within a reasonable period of time;

(7) The importance of providing permanency, stability, and continuity of relationships for the child;

(8) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(9) The child's adjustment to the child's current home, school, and community;

(10) The mental and physical health of all persons involved in the situation;

(11) Whether any person involved in the situation has been convicted of, pleaded guilty to, or accused of any criminal offense involving any act that resulted in a child being abused or neglected; whether the person, in a case in which a child has been adjudicated to be an abused or neglected child, has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether the person has been convicted of, pleaded guilty to, or accused of a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the person's family or household; and whether the person has been convicted of, pleaded guilty to, or accused of any offense involving a victim who at the time of the commission of the offense was a member of the person's family or household and caused physical harm to the victim in the commission of the offense.

Washington App. No. 17CA13

{¶20}  Under R.C. 3107.161(C), "[a] person who contests an adoption has the burden of providing the court material evidence needed to determine what is in the best interest of the child and must establish that the child's current placement is not the least detrimental available alternative." "[T]he least detrimental available alternative means the alternative that would have the least long-term negative impact on the child." R.C. 3107.161(A).

{¶21}  Moreover, in an adoption proceeding, the focus in not upon whether the natural parent should retain any rights, but upon whether the adoption is in the child's best interest. *In re Conroy*, 4th Dist. Lawrence No. 98CA42, 1999 WL 378346, *7 (June 9, 1999), citing *Charles B.*, 50 Ohio St.3d at 90. While adoption has the effect of terminating a natural parent's rights, R.C. 3107.15(A)(1), termination of parental rights is not the purpose of an adoption. *Id.* Instead, the primary purpose of an adoption proceeding is to find a child a stable and loving home. *Id.*, citing *In re Zschach*, 75 Ohio St.3d 648, 651, 665 N.E.2d 1070 (1996) ("Ultimately, the goal of adoption statutes is to protect the best interests of children. In cases where adoption is necessary, this is best accomplished by providing the child with a permanent and stable home * * *."); *In re Adoption of Kohorst,* 75 Ohio App.3d 813, 817, 600 N.E.2d 843 (3d Dist.1992) ("The cornerstone of the adoption statutes is the promotion of children's welfare, specifically those children who lack and are in need of the security and benefits of a loving home and family."); *In re Harshey*, 45 Ohio App.2d 97, 102, 341 N.E.2d 616 (8th Dist.1975) (stating that "[t]he main purpose of adoption is to find homes for children").

{¶22}  Considering the evidence as a whole, we are unable to conclude that the trial court abused its discretion by determining that adoption will promote the child's best interest. In determining that allowing the stepfather to adopt the child is the least detrimental alternative to safeguarding the child's growth and development, the trial court considered the absence of any

significant relationship that the father had developed with the child and noted that the father had not had any contact with the child for over one year before the stepfather filed the adoption petition. The court found that the child lacked a bond with the father and that she thought of her stepfather as "Daddy." The child has an established life in the mother's and her stepfather's home; in contrast, the child lacks any significant connection to the father's home or extended family. The court could have rationally determined that permitting the stepfather to adopt the child would have the least long-term negative effect on the child and that attempting to establish a relationship with the father would not safeguard her growth and development. Moreover, although the father asserts that he has no intention of disrupting the child's custodial situation, granting the stepfather's adoption petition provides the best opportunity for continuity in the child's custodial situation.

{¶23} Furthermore, the father failed to meet his burden to show that the child's current placement is not the least detrimental available alternative. The parties presented the court with two alternatives: (1) allow the stepfather to adopt the child, which would sever the father's parental rights; or (2) deny the adoption petition, which would allow the father to maintain his parental rights and to visit with the child. The court could have rationally determined that allowing the adoption would have the least long-term negative impact on the child. By allowing the adoption, the court preserved the stability of the child's life. If the court had denied the adoption, it would have interjected some instability and uncertainty—and perhaps confusion— into the child's life. The child knows her stepfather as "Daddy" and does not recognize the biological father as her father. The child does not have a bond with the father; but she is bonded with her stepfather. Introducing the father and his extended family into the child's life might confuse the young child and lead to emotional instability. *Deems, supra* (holding that the probate

court did not abuse its discretion by granting the petitioner's adoption petition when the evidence demonstrated that the children were being raised in a loving a stable environment and that their visitations with their natural father had been confusing and disconcerting to them). Thus, denying the adoption petition would not have the least negative long-term impact on the child. Instead, maintaining the child in her current circumstances—living as a family with her mother and stepfather—presents the least possibility of affecting her growth and development. *See In re Adoption of Ridenour*, 61 Ohio St.3d 319, 322, 574 N.E.2d 1055 (1991) (concluding that the trial court abused its discretion by not finding that the adoption would be in children's best interests when evidence illustrated that the petitioners provided the children with "the stability and continuity essential to healthy development"). In other words, allowing the stepfather to adopt the child preserves the child's "patterns of daily life, the mode of discipline, and the practical and spiritual rituals to which [she has] grown accustomed." *Id.*

{¶24} We recognize the father's concern that the mother stated she that she will inform the child that her stepfather adopted her and that the father is her biological father. The father believes that this would confuse the child. However, the mother indicated that she plans to wait until the child possesses sufficient maturity to comprehend the adoption and to make her own decision whether she wishes to establish a relationship with her biological father. While the father claims that preserving his relationship with his child would cause the least amount of confusion, the mother stated that she believes providing the child with consistency would better serve her interest, especially when the father chose not to have any contact with the child for more than one year. The mother additionally explained that she believed the child would be more confused to learn—at her tender age—that the stepfather is not her real father.

Washington App. No. 17CA13

{¶25} The remaining best interest factors also support the trial court's decision to allow the adoption. As the trial court noted, the child is happy, healthy, and well-adjusted. The child did not express any knowledge of the adoption proceedings or that the stepfather is not her real father. When the stepfather filed the adoption petition, the child had been separated from the father for approximately eighteen months (over one-half of her young life). The adoption will allow the child to maintain a stable and permanent family relationship and will remove the potential for future custodial conflicts. Nothing in the record suggests that the father is an unfit parent such that the child would be unable to be safely reunified with him within a reasonable period of time. The trial court, however, believed that the child needs permanency, stability, and the continuity of her current relationships. The court found that the child does not share a bond with the father but that she is very bonded to her stepfather. The court also found that the child is well-adjusted to her current home and community. We cannot state that the trial court abused its discretion by determining that the foregoing factors weigh in favor of granting the adoption.

## IV. Conclusion

{¶26} Accordingly, based upon the foregoing reasons, we overrule the father's sole assignment of error; and we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

Washington App. No. 17CA13

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs.

The Court finds that reasonable grounds existed for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas, Probate Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J., and Abele, J.: Concur in Judgment and Opinion.


For the Court


By:  _____
        Marie Hoover, Judge




### **NOTICE TO COUNSEL**


**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**