[Cite as *In re J.N.*, 2021-Ohio-2306.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN RE: J.N. | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| | : | Hon. W. Scott Gwin, J. |
| | : | Hon. John W. Wise, J. |
| | : | |
| | : | |
| | : | Case No. 2021 CA 0019 |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:       Appeal from the Richland County
                               Court of Common Pleas, Juvenile
                               Division, Case No. 2017 DEP 00236

JUDGMENT:                      Affirmed

DATE OF JUDGMENT:              July 7, 2021

APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant Mother

CHRISTOPHER ZUERCHER                    JOHN S. DILTS
GINA NENNIG                             28 South Park St.
Richland County Children Services       Mansfield, Ohio 44902
731 Scholl Rd.
Mansfield, Ohio 44907

For Defendant Father

JAMES BLUNT
3954 Industrial Parkway
Shelby, Ohio 44875

*Baldwin, J.*

**{¶1}** Appellant A.D. appeals from the March 3, 2021 Judgment Entry of the Richland County Court of Common Pleas, Juvenile Division.[1]

STATEMENT OF THE FACTS AND CASE

**{¶2}** J.N. (DOB 8/17/2014) is the biological child of appellant A.D. On September 14, 2017, Richland County Children Services Board ("Children Services") filed a complaint alleging that J.N. was a dependent and neglected child. Appellant agreed to a finding of dependency and the child was found dependent. The child was found dependent due to deplorable home conditions, substance abuse issues, potential medical neglect, potential educational neglect, a lack of parenting skills and other personal problems. The allegations of neglect were withdrawn and the child, on or about January 3, 2018, was placed in the protective supervision of Children Services.

**{¶3}** On or about December 19, 2018, the child was placed in the temporary custody of Children Services by ex parte interim order. The placement was necessitated by the interference of the family with the care and treatment of J.N., who was in the hospital and had been diagnosed as failure to thrive and with an acute kidney injury. The child had a feeding tube due to severe malnutrition.

**{¶4}** On April 18, 2019, Children Services filed a motion seeking to extend temporary custody. Temporary custody was extended. At a hearing held on October 14, 2019, Children Services was granted temporary custody of J.N. On March 10, 2020, Children Services filed a motion to extend temporary custody. Pursuant to a Judgment Entry filed on March 25, 2020, temporary custody was extended.

---

[1] The child's father is not involved in this appeal.

**{¶5}** Thereafter, on May 19, 2020, Children Services filed a motion seeking permanent custody of J.N. On August 25, 2020 appellant filed a Motion asking that the trial court ether return J.N. to her or grant legal custody of J.N. to K.N., her sister. Following a trial, the Magistrate, pursuant to a Decision filed on October 1, 2020, recommended that the parental rights of A.N. and M.R., the child's father, be terminated and that permanent custody of J.N. be granted to Children Services. The Magistrate further recommended that appellant's motion for return of the child or legal custody to K.N., her sister, be denied because it was not in J.N.'s best interest. Appellant filed objections to the Magistrate's Decision. As memorialized in a Judgment Entry filed on March 3, 2021, the trial court overruled the objections and approved and adopted the Magistrate's Decision.

**{¶6}** Appellant now appeals, raising the following assignment of error on appeal:

**{¶7}** "I. THE COURT ERRED BY GRANTING PERMANENT CUSTODY TO RCCSB WHEN A SUITABLE FAMILY MEMBER HAD APPLIED TO BECOME THE CHILD'S LEGAL CUSTODIAN."

I

**{¶8}** Appellant, in her sole assignment of error, argues that the trial court erred by granting permanent custody of J.N. to Children Services when a suitable family member, namely, K.N., the child's maternal aunt, had applied to become his legal custodian. Appellant argues that this Court should vacate the trial court's disposition and place J.N. in the legal custody of K.N. We disagree.

**{¶9}** R.C. 2151.412(H), in relevant part, states:

{¶10} In the agency's development of a case plan and the court's review of the case plan, the child's health and safety shall be the paramount concern. The agency and the court shall be guided by the following general priorities:…

{¶11} (5) If the child cannot be placed with either of the child's parents within a reasonable period of time or should not be placed with either, if no suitable member of the child's extended family or suitable non-relative is willing to accept legal custody of the child, and if the agency has a reasonable expectation of placing the child for adoption, the child should be committed to the permanent custody of the public children services agency or private child placing agency.

{¶12} The child being placed in a permanent situation that fosters growth, stability, and security serves the child's best interests. *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 324, 574 N.E.2d 1055 (1991). Accordingly, a court is not required to favor a relative if, after considering all the factors, it is in the child's best interest for the agency to be granted permanent custody. *In re M.W., 5th Dist. Stark No. 2021 CA 00019, 2021-Ohio-1875, paragraph 50.*

{¶13} The court must consider all of the elements in R.C. 2151.414(D) as well as other relevant factors; there is not one element that is given greater weight than the others, *In re Schafer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. *Schafer* notes a trial court's statutory duty in determining whether it is in the best interest of a child to grant permanent custody to an agency does not include finding by clear and convincing evidence that no suitable relative was available for placement. "The statute requires a weighing of all relevant factors, and the trial court did that in this case. R.C. 2151.414 requires the court to find the best option for

the child once a determination has been made pursuant to R.C. 2151.414(B)(1)(a) through (d). The statute does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than other factors." *Schaeffer*, supra, 2006–Ohio–5513 at ¶ 64.

**{¶14}** Based upon the evidence, the court properly denied the motion for a change of legal custody to K.N. because it was not in J.N.'s best interest. There was testimony that K.N., the child's maternal aunt, rebuffed the prior efforts of Children Services and the CASA/Guardian ad Litem to place the child with her. Breeann Lee, the ongoing caseworker with Children Services, testified that K.N.'s contact with the child was not consistent and that the agency was not in support of her having legal custody. She testified that prior to about three weeks before the trial, K.N. had resided with her parents and that she did not know "that her circumstances are as stable as they would need to be for legal custody." Transcript at 234. She testified that K.N. had never approached the agency and asked to be granted visitation with J.N. or inquired about his health or welfare. She did not ask for custody when the agency took emergency temporary custody of J.N. There also was testimony at the trial that the agency did not consider K.N. to be suitable for placement since, while A.N. was living with K.N., the house was not suitable.

**{¶15}** There also was testimony that K.N., who was upset when Children Services asked for custody of J.N., posted videos on Facebook indicating that Children Services had done her family wrong. She posted videos of J.N. During the trial, K.N. testified that she did not believe that J.N. had special needs and that she thought that Children Services made A.N. have all of J.N's teeth removed due to rot but that she did not think

that all of them needed to be removed. She lacked an understanding of the seriousness of the child's medical issues which resulted in his hospitalization in December of 2018 and necessitating the insertion of a feeding tube to combat his severe malnutrition. The malnutrition was life threatening, but K.N.'s husband did not believe that J.N. was malnourished. As noted by the Magistrate, rather than educating herself on J.N.'s medical conditions, K.N. elected to rant on social media about Children Services and blame the agency for the circumstances resulting in J.N.'s removal.

{¶16} The CASA/GAL testified that she recommended that Children Services be granted permanent custody of J.N. and that he be made eligible for his foster family to adopt him. She testified that from the very beginning of the case, she went to the home where J.N. was living along with K.N. and others and that the house was in "deplorable" condition. Transcript at 447. The house smelled bad and was very cluttered, there was overflowing trash in the kitchen, the bathroom was not working, the ceiling was leaking and there were cats and kittens everywhere. Soiled diapers were piled from floor to ceiling and the kitchen was filthy. The CASA/GAL also testified that while she asked K.N. in the fall of 2019 if she was interested in taking J.N., K.N. indicated that she could not take him. K.N. had frequently changed residences and had never lived independently of others.

{¶17} There also was testimony that K.N. relied on Children Services to make sure that J.N. had his medical and dental needs met even though she was aware of such problems. She did not assist appellant in getting J.N. to dental or medical appointments but rather relied on Children Services.

{¶18} The Magistrate, in her Decision, stated, in relevant part, as follows:

**{¶19}** "Likewise, it is contrary to the child's best interest to give preference [K.N.s'] status as maternal aunt. The evidence did not demonstrate, even given her biological relationship with the child, that it would be in the child's best interest to remove him from his current placement where, for the first time in his life, he has lived without the rampant neglect he endured while in the care of his mother and the care of his aunt,[ K.N.], when they lived together. Since his removal from his mother, the child has transformed into a healthy, happy child. He is, for the first time in his life, receiving adequate nutrition, living in an environment of safety and stability, and receiving diligent attention to all of his many needs. Both Children Services and the CASA/GAL had previously sought to engage maternal aunt in the care of the within child and K.N. declined. Her present lack of awareness and unwillingness to acknowledge the severe neglect the within child endured is further evidence that placement of the child herein in her legal custody would be contrary to the child's best interest."

**{¶20}** The trial court, in its March 3, 2021 Judgment Entry, noted that the Magistrate had disapproved of K.N. as a placement "due to her awareness of the child's living conditions, the negative consequences her inaction had on the child's well-being, and her failure to intervene of the child's' behalf." The trial court also noted K.N.'s history of failing to help care for J.N. while knowing his condition and her preoccupation with Children Services rather than J.N.'s best interest.

**{¶21}** We find that the trial court did not err in finding that placement with K.N. was not in J.N.'s best interest and in granting permanent custody of J.N. to Children Services rather than placing J.N. with K.N.

**{¶22}** Appellant's sole assignment of error is, therefore, overruled.

**{¶23}** Accordingly, the judgment of the Richland County Court of Common Pleas, Juvenile Division is affirmed.

By: Baldwin, P.J.

Gwin, J. and

Wise, John, J. concur.