[Cite as *In re L.D.R.S.*, 2023-Ohio-3765.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| IN THE MATTER OF:<br><br>L.D.R.S. | CASE NO. 2023-T-0026<br><br>Civil Appeal from the<br>Court of Common Pleas,<br>Juvenile Division<br><br><br>Trial Court No. 2017 JC 00024 |

## O P I N I O N

Decided: October 16, 2023
Judgment: Reversed and remanded

*Michael Georgiadis*, 135 Pine Avenue, S.E., Suite 211, Warren, OH 44481 (For Appellant, Michelle Zadunajsky).

*Anthony G. Rossi, III* and *Brendan J. Keating*, Guarnieri & Secrest, PLL, 151 East Market Street, P.O. Box 4270, Warren, OH 44482 (For Appellee, John K. Snyder).

*Carol A. Sopkovich*, Martin F. White Co., LPA, 156 Park Avenue, N.E., Warren, OH 44481 (Guardian Ad Litem).

MATT LYNCH, J.

{¶1} Appellant, Michelle Zadunajsky, appeals the Judgment Entry of the Trumbull County Court of Common Pleas, Juvenile Division, terminating her companionship rights with the minor child, L.D.R.S. For the following reasons, we reverse the decision of the court below and remand for further proceedings consistent with this Opinion.

{¶2} L.D.R.S. was born on August 20, 2014, to unmarried parents.

{¶3}    On September 5, 2019, the juvenile court awarded John Snyder, the child's natural father and appellee, legal custody.  At the same time, Zadunajsky, L.D.R.S.'s paternal grandmother, was granted companionship rights with the child.

{¶4}    On December 20, 2021, Snyder filed a Motion for Termination or Modification of Visitation on the grounds that "the child has now been adopted [by his stepmother] and there [is] an intact family."

{¶5}    On December 16, 2022, a Magistrate's Decision was issued granting the Motion for Termination without hearing or the proffering of evidence.  The magistrate ruled:

> Father's arguments are based in the law as codified in the Ohio Revised Code.  Paternal Grandmother's arguments are solely based on equitable considerations as to what may be in the best interest of (L.D.R.S.).  However, given the status of the present law set forth in Title 31 of the Ohio Revised Code, once the adoption took place, the Paternal Grandmother no longer had standing to seek visitation.  Once an adoption order has been entered, all grandparent visitation rights are terminated.  Following the order of adoption, a natural grandparent lacks standing to petition for visitation.  Further, the Family Court has now lost jurisdiction or statutory authority to grant visitation to relatives of biological parents whose rights have been terminated by an adoption decree.  While in the case at bar the Movant [sic] is a paternal grandmother and father is the legal custodian, there is a case on point that prohibits a court from granting visitation to a biological relative following an adoption.  *In re Adoption of Ridenour (1991), 61 Ohio St.3d 319, 325, * * *.*
>
> Thus, no case law under the Ohio Revised Code allows a court to grant or maintain established visitation once an adoption is granted.  Laws establishing grandparent visitation are within the province of the legislature; however, the legislature has NOT provided for such visitation in the case of an adoption.  ORC §3107.15 does not allow grandparent visitation to survive an adoption.
>
> This legal reality is very frustrating to the court because the main issue should be what is in the best interest of the subject minor child.  This equitable right does NOT exist under the present law.  The Paternal Grandmother would only appear to have standing to now

2

seek court-ordered visitation with [L.D.R.S.] upon the death of Father or the divorce/dissolution of John and Stephanie Snyder.

{¶6} On February 7, 2023, the juvenile court overruled Zadunajsky's objections to the Magistrate's Decision.

{¶7} On April 17, 2023, Zadunajsky filed a notice of appeal. On appeal, she raises the following assignment of error: "Trial Court committed prejudicial error in its determination that an adoption by the step-mother of the child was a proper basis for terminating the pre-existing visitation of the paternal grandmother."

{¶8} Issues regarding visitation and companionship are generally reviewed under an abuse of discretion standard. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). Issues regarding statutory interpretation, however, are reviewed de novo. *State v. Pariag*, 137 Ohio St.3d 81, 2013-Ohio-4010, 998 N.E.2d 401, ¶ 9.

{¶9} Zadunajsky was granted companionship with the minor child pursuant to R.C. 3109.12(A), which provides that "[i]f a child is born to an unmarried woman * * * the parents of the father * * * may file a complaint requesting that the court grant them reasonable companionship or visitation rights with the child."

{¶10} Pursuant to R.C. 3107.15(A)(1)(a), a final decree of adoption has the following effects: "Except with respect to a spouse of the petitioner and relatives of the spouse, to relieve the biological or other legal parents of the adopted person of all parental rights and responsibilities, and to terminate all legal relationships between the adopted person and the adopted person's relatives, including the adopted person's biological or other legal parents, so that * * * the adopted person thereafter is a stranger to the adopted person's former relatives for all purposes including inheritance and the interpretation or construction of documents, statutes, and instruments, whether executed before or after

3

the adoption is decreed, which do not expressly include the person by name or by some designation not based on a parent or child or blood relationship."

{¶11} We agree with Zadunajsky that, under a plain reading of this statute, none of the effects described in division (A)(1)(a) apply to Zadunajsky. The opening words of the statute exempt "a spouse of the petitioner and the relatives of the spouse" from the effects of a final decree of adoption. Applied to the present case Snyder as spouse of the adopting stepparent and Zadunajsky as a relative of Snyder are exempt from those effects. To the extent that the juvenile court terminated Zadunajsky's companionship rights in the belief that R.C. 3107.15(A)(1)(a) compelled that result, the court's decision is in error.

{¶12} The juvenile court and Snyder also rely on supreme court precedents to support the conclusion that the stepparent adoption of L.D.R.S. terminated Zadunajsky's companionship as a matter of law. In *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 574 N.E.2d 1055 (1991), the trial court denied petitions for adoption by foster parents, following the termination of the biological parents' rights, "solely because of the difficulties it would create for grandparent visitation rights." *Id.* at 323. Inter alia, the Supreme Court of Ohio considered the issue of whether Ohio law supports post-adoption visitation by grandparents in a stranger adoption. The court concluded that "neither the juvenile court, nor the probate court, may consider the possibility of post-adoption visitation by biological grandparents following a stranger adoption." *Id.* at 325.

{¶13} The supreme court explained its reasoning, wholly dependent on the application of R.C. 3107.15(A)(1)(a), as follows:

> Despite the potential benefits that children may derive from relationships with their grandparents, we cannot hold that the state's interest in preserving the extended family overrides its interest in

4

providing children, who would otherwise become wards of the state, with a permanent and stable home. Although there may be cases where a child who is adopted by strangers would benefit from continued interaction with his biological grandparents, we cannot permit such a result unless the legislature modifies R.C. 3107.15. R.C. 3107.15 reflects the legislature's intent to find families for children. If preconditions are imposed on the adoptive parent-child relationship, or if adoptive parents are forced to agree to share parenting responsibilities with people whom they do not know, many potential adoptive parents will be deterred from adopting. Moreover, even where adoptive parents consent to visitation by biological relatives whom they do not know, such an arrangement is bound to be stressful for the child, particularly where the parties are not favorably disposed toward one another. In the absence of a legislative directive, we cannot sanction such a result. Consequently, we hold that the juvenile court abused its discretion in ordering that visitation with the biological grandparents shall continue post-adoption and that the trial judge erred in considering the grandparent's visitation rights in ruling on the adoption petitions.

*Id.* at 328.

{¶14} The foregoing demonstrates the inapplicability of *Ridenour* to the present case. The biological grandparents in *Ridenour* were not the relatives of a spouse of the petitioner, and this distinction is material. In *Ridenour*, R.C. 3107.15(A)(1)(a) applied to the grandparents and the result was mandated accordingly without regard to other considerations. In the present case, R.C. 3107.15(A)(1)(a) does not apply to Zadunajsky and the result is likewise determined by this fact without further consideration. The magistrate's statement that "once an adoption order has been entered, all grandparent visitation rights are terminated" is not accurate with respect to Zadunajsky inasmuch as she is the relative of the spouse of the petitioner.

{¶15} Snyder cites abundant authority in which R.C. 3107.15(A)(1)(a) and *Ridenour* apply to divest biological grandparents of their visitation and companionship rights. Snyder does not cite any case, however, and this court is not aware of such a case, in which R.C. 3107.15(A)(1)(a) has been applied to the relatives of the

5

Case No. 2023-T-0026

spouse/biological parent in a stepparent adoption. *See In re Martin*, 68 Ohio St.3d 250, 626 N.E.2d 82 (1994) (applying *Ridenour* where putative paternal grandparents sought visitation following adoption by maternal grandparents); *State ex rel. Kaylor v. Bruening*, 80 Ohio St.3d 142, 145, 684 N.E.2d 1228 (1997) ("R.C. 3107.15 has been construed to divest courts of *jurisdiction* or statutory authority to grant visitation to relatives of biological parents whose rights have been terminated by an adoption decree"); *In re L.K.P.*, 11th Dist. Trumbull No. 2014-T-0077, 2017-Ohio-500, ¶ 16 (affirming the judgment that "once the parent-child relationship between L.K.H. and appellant's son * * * was severed, appellant's visitation rights were severed as a matter of law"); *In re L.H.*, 183 Ohio App.3d 505, 2009-Ohio-3046, 917 N.E.2d 829, ¶ 27 (2d Dist.) ("the effect of R.C. 3107.15(A) is to deny standing to former relatives of an adopted child to seek visitation"). This being so, the juvenile court's termination of Zadunajsky's companionship rights on the grounds that she was divested of these rights by virtue of the stepparent adoption of L.D.R.S. constitutes an abuse of discretion. On remand, the court may consider whether the continuation of Zadunajsky's companionship rights is in the best interest of the child in light of the stepparent adoption.

{¶16} The sole assignment of error is with merit.

{¶17} For the foregoing reasons, we reverse the decision of the juvenile court and remand for further proceedings consistent with this opinion. Costs to be taxed against the appellee.


JOHN J. EKLUND, P.J.,

ROBERT J. PATTON, J.,

concur.

6

Case No. 2023-T-0026